THE NORTHERN ASSURANCE COMPANY, Defendant Below, Plaintiff in Error, *vs.* RACHLIN CLOTHES SHOP, INC., Plaintiff Below, Defendant in Error. THE PENNSYLVANIA FIRE INSURANCE COMPANY, Defendant Below, Plaintiff in Error, *vs.* RACHLIN CLOTHES SHOP, INC., Plaintiff Below, Defendant in Error. THE HOME INSURANCE COMPANY, Defendant Below, Plaintiff in Error, *vs.* RACHLIN CLOTHES SHOP, INC., Plaintiff Below, Defendant in Error. FIREMAN'S FRIEND INSURANCE COMPANY, Defendant Below, Plaintiff in Error, *vs.* RACHLIN CLOTHES SHOP, INC., Plaintiff Below, Defendant in Error. THR HARTFORD FIRE INSURANCE COMPANY, Defendant Be-

Statement.

low, Plaintiff in Error, *vs.* RACHLIN CLOTHES SHOP, INC., Plaintiff Below, Defendant in error.

1. INSURANCE—WHETHER PRODUCTION OF CERTIFICATE AS TO CIRCUMSTANCES OF FIRE WAS WITHIN REASONABLE TIME HELD FOR JURY.

   In action on fire policies, whether production, at time of trial, of certificate as to circumstances of fire, required by policies, was within a reasonable time after the demand therefor, *held* for jury.

2. INSURANCE—WHETHER MISREPRESENTATIONS AS TO PURCHASE PRICE CONSTITUTED FRAUD HELD FOR JURY.

   Whether insured's false statements as to consideration paid for certain merchandise constituted fraud invalidating policy, where proof of loss was based on the true purchase price, *held* for jury.

3. INSURANCE—WHETHER INSURED'S GENERAL MANAGER INSTIGATED FIRE HELD FOR JURY.

   In action on fire policies, whether insured's treasurer and general manager instigated the fire *held* for jury.

4. INSURANCE—ACTION OF DIRECTORS IN INSTIGATING FIRE PRECLUDES RECOVERY BY CORPORATION IF PURPOSE WAS TO ENABLE CORPORATION TO PROFIT.

   Action of treasurer and general manager of insured corporation, who was in complete charge of the corporation and dominated its affairs and exercised all functions of board of directors, in instigating fire to enable corporation to profit thereby, precludes recovery on policies.

5. INSURANCE—WHETHER GENERAL MANAGER OF CORPORATION INSTIGATED FIRE TO ENABLE CORPORATION TO PROFIT HELD FOR JURY.

   In corporation's action on fire policies, whether general manager of corporation instigated the fire to enable corporation to profit thereby or to gratify some personal motive of his own *held* for jury.

(*March* 8, 1924.)

WOLCOTT, Chancellor, PENNEWILL, Chief Justice, HARRINGTON and RICHARDS, J. J., sitting.

*Charles F. Curley* and *W. Calvin Chesnut*, of the Baltimore, Maryland, Bar, for plaintiffs in error, defendants below.

*Daniel O. Hastings* and *Clarence A. Southerland* for defendant in error, plaintiff below.

Supreme Court, January Term, 1924.

Error to Superior Court, New Castle County.

Actions by the Rachlin Clothes Shop, Inc., against the Northern Assurance Company, against the Pennsylvania Fire Insurance Company, against the Home Insurance Company, against the Fireman's Friend Insurance Company, and against the Hartford Fire Insurance Company. Judgment for plaintiff, and defendants·bring error. Reversed and remanded.

Statement of the Case. These were separate actions (tried as one) against five insurance companies to recover for loss occasioned by a fire which destroyed the stock of merchandise owned by the plaintiff below and located in its storehouse at Dover. The aggregate face amount of the insurance policies was $34,400. The plaintiff below claimed both in its proof of loss and at the trial that the value of the merchandise on hand at the time of the fire (August 23, 1921) was over $38,000, and that there was a total loss thereof. The plaintiff, therefore, sought to recover the full amount of the insurance. The cases were tried together and the jury by its verdict found in favor of the plaintiff below in the amount of $14,500.00.

The errors assigned present three questions for determination by this court. Those questions, and the facts disclosed by the record as pertinent to their consideration, will be found stated in the opinion of the court.

Wolcott, Ch., delivering the opinion of the majority of the court:

1. The insurance companies demanded of the insured that it "furnish a certificate of the magistrate or notary public (not interested in the claim as a creditor, or otherwise, nor related to the insured) living nearest the place of the fire, stating that he has examined the circumstances and believes the insured has honestly sustained loss to the amount that such magistrate or notary public shall certify." The demand was based on a provision of the policies from which the quoted language is taken. The demand was made on October 8, 1921, before suits on the policies were instituted. Though the insured obtained a certificate which it claims is in accordance with the demand, yet it failed to produce the same until the trial was in progress and then only after the closing of testi-

mony in chief by both plaintiff and defendants.   The introduction in evidence of the certificate was objected to by the defendants. It was, however, admitted by the trial court.   The defendants asked the court below to charge the jury as a matter of law that the production of the certificate at the trial did not constitute a compliance with the policy provision, and that, therefore, a verdict should be returned in favor of the defendants.   This was the only charge requested with respect to the magistrate's certificate. The court below refused to give the binding instruction.   Its charge to the jury makes no reference to the certificate.

[1]   The action of the court below in thus declining to instruct the jury to find for the defendants is alleged to   constitute error.   We do not feel at liberty to examine *de novo* the question of law involved in the proposition raised by this assignment of error, for the reason that the case of *Continental Insurance Co. v. Rosenburg*, 7 *Penn*. 175, 74 *Atl*. 1073, decided by this court in 1909, has closed the door against the discussion.   The plaintiffs in error seek to distinguish that case from the one before us.   We are unable, however, to do so.   That case was concerned with the production of certain books and inventories for the inspection of the insurer in obedience to the requirements of the socalled "iron safe clause" of the policy.   The books and inventories were demanded but not produced until the trial was in progress.   The trial court in that case in construing the provisions of the contract held that the production must be made within a reasonable time, that production at the trial could not as a matter of law be said to be not within a reasonable time, and that it was for the jury to determine whether, in view of all the circumstances and considering the purpose for which they were to be produced, the plaintiff had produced the books and inventories within a reasonable time.   The Supreme Court approved of this ruling.   So clearly does it control the question now being considered in the case at bar, that the only way we could escape its consequences would be to disregard it.   This we are unwilling to do especially when to do so would determine this case finally against the plaintiff below who, we are entitled to assume, may have been guided in its conduct by that very decision.

2.   We now proceed to consider the second ground which the plaintiffs in error urge as constituting error in the proceedings below.   The contention made under this head is based on that provision of the policies which reads, as follows:

"This entire policy shall be void   *   *   *in case of any fraud or false swearing by the assured touching any matter relating to this insurance or the subject thereof, whether before or after a loss."

The facts, briefly stated, upon which it is contended that an avoidance of the policy has occurred under the provision of the policy above quoted are as follows:  after the fire the plaintiff below presented its proof of loss to the various insuring companies setting forth the amount of its claim in obedience to the provisions of the policies in that behalf.   In the proof of loss the value of the merchandise in the store at the time of the fire was stated as $38,035.07.   A study of the figures set forth in the proof of loss discloses that the plaintiff below claimed a loss in one item of $5,194.-54.   This item covers goods purchased by the plaintiff below from one Cohen, a former owner of the store, at the price of $5,837.39, a figure as is manifest in excess of that actually claimed in the proof of loss.   The companies apparently were not satisfied to accept the proof of loss without further question.   They accordingly demanded an inspection of the books kept by the insured.   An examination of the books disclosed the  entry of an item showing the purchase price of the goods bought by the plaintiff below from Cohen to be $9,837.39, paid by notes of Rachlin Clothes Shop in the amount of $5,832.31 and by cash in the amount of $4,000.   The adjusters for the companies interrogated the general manager, Rachlin, as to this entry.   Rachlin, who was acting for the plaintiff below, asserted the correctness of the entry and stated that the $4,000 in cash was advanced by Mr. Robbins, who was the president of the plaintiff below.   It is admitted that the entry in the books was false, that Robbins did not advance any cash, and that in truth the price paid to Cohen for the goods was $4,000 less than the sum represented by the books and asserted by Rachlin.   This false statement by Rachlin supplies the basis on which the present contention rests, viz., that fraud within the meaning of the above quoted policy provision was committed.

The statements made by Rachlin when he was questioned by the adjusters were not made under oath. We are, therefore, not concerned with that portion of the forfeiture clause which avoids the policies for "false swearing." This being so, there is no occasion for us to trouble ourselves with a discussion such as some courts have been called upon to engage in as to what if any distinction is to be drawn between fraud and false swearing in policy clauses similar to the one involved here. The sole question before us in this connection is this: Is it a fraud within the meaning of the quoted clause for an insured to make a falsely exaggerated statement concerning what he paid as a consideration for certain merchandise when by his proof of loss formally presented and sworn to he states his claim to be based on a less sum and one that actually accords with the true purchase price?

When the word "fraud" is used in the policy contracts sued on, we must take it to be used in the sense which the law accords to it. In *Kent County R. R. Co. v. Wilson*, 5 *Houst.* 49, Chief Justice Gilpin gave expression to the following:

"Now, I may say that actual or positive fraud may be defined or described to be any false representation, deceit, device, or artifice resorted to or used by one person with the intent and for the purpose of deceiving and misleading another person to his injury."

This language clearly recognizes what we dare say no court has ever questioned, that one of the elements indispensable to the existence of fraud, whether accomplished or attempted, is an intent knowingly to mislead its victim to his injury. We have given careful consideration to the evidence upon which the charge of fraud is based in his case and are unable to see how we would be justified in saying as a matter of law that it necessarily discloses the presence of this essential ingredient of injury either actual or potential. If the insured through the oral statements of its authorized agent falsely exaggerated the purchase price of the merchandise by $4,000, we can see no possibility of necessary injury to the insurer when the proofs of loss in which the extent of the claim for indemnity was formulated were prepared on a basis below even a true representation of the price. No claim was made for the $4,000 excess. Indeed the value actually claimed was, as

was before stated, less than the purchase price. Even where there has been a willful exaggregation of values and a claim of loss based thereon in the formal proof, yet in some jurisdictions it has been held that if the true loss ascertained after striking off the exaggeration is in excess of the face of the policy, the insurer cannot be said to have been injured by the false valuation and hence fraud cannot be said to exist. *Springfield Fire & Marine Ins. Co. v. Winn*, 27 *Neb.* 649, 43 *N. W.* 401, 5 *L. R. A.* 841; *Shaw v. Scottish Commercial Ins. Co.*, 1 *Fed.* 761.

The court below left it for the jury to say whether the false statement of Rachlin constituted fraud such as to avoid the policies. The language of the court on this point was:

"We say to you that if such false statement, whether oral or written, of a material fact was knowingly made by the insured as his authorized agent, to the insurer, or its authorized agents, for the purpose of defrauding the insurers, then under the terms of the contract of insurance, the policies thereupon became void and the plaintiff would not thereafter be entitled to a recovery upon them."

[2] No objection is raised to this charge on the ground that it fails to elaborate the essential elements which the law regards as inherent in the conception of fraud. The sole complaint in this connection is that the court below refused to charge as a matter of law that the representation admitted to be false avoided the policies. It may be conceded that the matter of price which the plaintiff below paid for the goods purchased from Cohen was a pertinent subject of inquiry by the insurers. It does not, however, follow as a conclusion of law that a misrepresentation regarding this fact must necessarily have been intended and calculated to injure the defendants and thus defraud them. The most that can be said is that this was a debatable question and consequently one that fell within the province of the jury to determine.

3. The third and last ground upon which the defendants below rely as constituting error is that the trial court struck from the record all testimony relating to the incendiary origin of the fire. The plaintiff below insists that the action of the court in striking this testimony from the record was correct because (a) the circumstances shown by the eliminated testimony are in-

sufficient to warrant the jury in concluding that Rachlin, the treasurer and general manager of the plaintiff below, had anything to do with the alleged incendiarism; and (b) if they do, yet the plaintiff below cannot be defeated of its right to recover for the reason that, quoting the language of the brief of the plaintiff below, "the act of an officer of a corporation in wilfully burning the property of the corporation cannot defeat the right of the corporation to recover on a policy of insurance covering such property, in the absence of any participation in such act by all, or substantially all, of the stockholders of the corporation."

We shall dispose of these two contentions in the order of their statement.

[3]    (a)    Is there enough evidence to submit to the jury the question of Rachlin's participation in the alleged incendiarism?

The evidence clearly shows, and the plaintiff below admits, that the jury would have been warranted in concluding that the fire in question was willfully set by some one. If believed, it indicates that some inflammable substance such as coal oil had been poured or sprinkled over the place, which might account for the explosive report which was distinctly heard by the firemen. We may assume, therefore, for the present purpose that the fire was of incendiary origin. Is there enough evidence to justify a jury in concluding that Rachlin instigated it? We think there is. The evidence would justify the following conclusions: Rachlin was treasurer and general manager of the plaintiff below. As is hereafter pointed out, he may be regarded as the only representative of the corporation, exclusively managing all its affairs. He was the sole negotiator for all the insurance placed on the burned merchandise. There is evidence which would justify the jury in concluding that the stock of merchandise was heavily over-insured. While the insurance amounted to $34,400, evidence was offered to the effect that the value of the insured goods was not over $5,000 to $8,000. Not only so, but the evidence further showed that Rachlin endeavored to secure even more insurance. He succeeded in securing a binder for $10,000 additional insurance from the Royal Insurance Company. But when an inspecting

agent of this company made an examination of the stock and estimated its value at not more than $5,000, the binder was cancelled. This was on August 18, and within five days the fire occurred somewhere between 1.40 and 2 o'clock in the morning of the 23d. At the time of the fire Rachlin was in Wilmington. His local manager, Goldstein, lived near the scene of the fire. He was aroused and went to a restaurant where he called Rachlin on the telephone and said, "Hello, Dan. It is down to the ground. You have had a big fire. Get a taxi and come down." The storehouse in which the fire occured appears to have been unoccupied on the night in question. The fire started and appears suddenly thereafter to have reached the stage of a general conflagration of the premises, due possibly to the presence of inflammable oil. At 1:20 o'clock a night watchman of the town looked in the store, saw the night light burning and everything appeared all right. When he came back at about 2 o'clock, the fire was burning, the smoke was thick as from oil, and the night light was out.

The foregoing are the salient circumstances tending to show that Rachlin instigated the setting of the fire. There are other circumstances which we shall not pause to enumerate, which in some of their aspects might in the opinion of a jury be laid hold of as tending to strengthen the inference from the above facts that the fire in question was ignited for the purpose of collecting a large amount of over-insurance procured by Rachlin to be underwritten on the destroyed merchandise. While, of course, these circumstances do not conclusively indicate that Rachlin caused the goods to be burned, yet they are sufficient in our opinion to be submitted to the jury for their determination. They are as strong in their tendency to connect the fire with Rachlin's willful instigation as are the circumstances disclosed in the report of the case of *McConnel v. Ins. Co.*, 18 *Ill.* 228, to connect the suspected person with the fire involved in that case. We do not conceive it necessary to elaborate the argument which might be legitimately made and accepted that the circumstance shown would justify the conclusion, if the jury saw fit to draw it, that in securing what some of the witnesses testify was over-insurance to the extent of twenty or

twenty-five thousand dollars, Rachlin was intending to set, or cause to be set, a profit-making fire.

[4] (b) If the jury would have been justified in finding that Rachlin caused the fire, would it be permissible to say as a matter of law that the corporation whose affairs he was conducting could by his act be defeated in its attempt to collect on the policies? This is the next and final inquiry which invites our attention.

John P. Robbins was president of the corporation, and Rachlin was as before observed its treasurer and general manager. The corporation had a board of directors, for on one occasion at least Robbins testified to attending a meeting. Who composed the board does not appear. The fact appears from the evidence, however, that if the board of directors ever did function it had at the time of the opening of the business at Dover entirely ceased to do so. Rachlin, whose name the corporation had used in its corporate title and whose photograph appeared on its stationery, was in complete charge of the corporation and dominated its affairs. He appears to have exercised not only all the functions of the board of directors, but as well to have gathered unto himself all the duties of the president. The evidence warrants the view that in every essential respect he was the sole person in charge of the corporation or in any way interested in its business conduct. The testimony is not clear as to the ownership of the corporation's stock. Robbins was undoubtedly the largest cash investor. The attorneys for the plaintiff below speak of him as the sole owner. The evidence, however, is sufficient to warrant the jury in believing that Rachlin had a substantial stock interest, because certificates of stock are outstanding in his name. These certificates are now held by Robbins, however, apparently as collateral security to notes which Rachlin appears to have given for the purchase thereof. But Rachlin remains the registered holder of the stock.

The evidence shows Rachlin's relationship to the corporation to have been one of complete domination of its affairs. Any other persons who were connected with the corporation, if there were any other than Robbins, were mere figure heads. Rachlin for-

mulated all its policies and directed all its business. The question as it presents itself to our minds is, therefore, this: May the responsible persons in a corporation, president, directors and in this case stockholders, turn over to one man complete and absolute control of all its affairs, abandoning to his sole judgment the determination of its policies, and, in case he attempts in the interest of the corporation to defraud insurance companies in the manner here indicated, be heard to say that his final act of attempted consummation of the fraud was beyond his authorized power to commit, and, therefore, not the act of the corporation?

The main proposition so earnestly contended for by the counsel for the plaintiff below may be readily accepted. This proposition is that the extent of a corporation's liability for the tortious acts of its agents is to be measured by the rule of respondeat superior, by which it is to be understood that a corporation like any other principal is answerable for the acts of its agent only when the same are done within the scope of his authority actual or apparent.

Before accepting this proposition, however, as controlling in the case at bar, it is necessary first to consider whether under the evidence Rachlin was an agent of the plaintiff below. He was an officer. That is clear. In fact he was the only acting officer. He also acted as the board of directors, the governing body of the corporation. But was he in the matters here involved an agent? Generally speaking officers of a corporation are often spoken of as its agents. That in certain activities officers may be mere agents is beyond question. But in certain other of their activities they are more than mere agents. We conceive that in matters of superior control and management and in matters having to do with the ultimate direction of its affairs, the officers who possess the governing control are to be regarded as the corporation itself. A corporation being a purely metaphysical creature, having no mind with which to think, no will with which to determine and no voice with which to speak, must depend upon the faculties of natural persons to determine for it its policies and direct the agencies through which they are to be effectuated. The individuals

within its organization who perform for it these functions are generally its directors. In this state the general corporation law, under which the plaintiff below was incorporated, provides that the directors shall manage the business of every corporation created under that law. The stockholders are without authority to do this. How can it be said that in performing this managerial duty for the corporation the directors act as agents? They act rather in the place of the corporation itself. If we speak of an agent, we necessarily connote the complement of a principal. We further necessarily imply some sort of instructions which define the scope of the agent's authority. If this be so, when an agent of a corporation is referred to, it means that some one has selected him, has laid out for him his task and defined the limits of his authority. Who does this? Manifestly the corporate creature, the *fictio legis*, does not because it cannot. Such activities require the exercise of functions which only natural persons possess. To suggest the idea, therefore, of an agent for a corporation is but to emphasize the existence somewhere in its organization of natural persons who are themselves acting not as agents but in the office of principal for the corporation itself. These persons who exercise for the corporation what we may call its primary powers, whether of the kind just mentioned or others, formulate and express for it its corporate will and purpose. They are the ultimate source from which flows the authority for all the corporate activity. They stand in the corporation's place and are, so to speak, its *alter ego*. Machen in his work on the Modern Law of Corporations speaks of them as vice-principals and as analogous to managing partners or to the Legislature of a state. *Volume* 2, §§ 1399, 1435. In *Thompson on Corporations, vol.* 2, § 1787, the executive and administrative officers are spoken of as "inherent agencies," as the "means of the hands and the head by which the corporation normally acts." In *Burrill v. Nahant Bank, 2 Metc. (Mass.)* 163, 35 *Am. Dec.* 395, the directors are characterized by Chief Justice Shaw as constituting the corporation. "They do not," says he, "exercise a delegated authority in the sense in which the rule applies to agents." Likewise in *Hoyt v. Thompson's Ex'rs, 19 N. Y.*

207, their powers are spoken of as "original and undelegated." In *Goodspeed v. East Haddam Bank*, 22 *Conn.* 530, 58 *Am. Dec.* 439, the directors are said to be "the mind and soul of the body politic and corporate, and constitute its thinking and acting capacity." Expressions such as these may be gathered from other text writers and adjudicated cases. See *Fletcher, Cyclopedia of Corporations, vol.* 3, §§ 1740, 1741. It is unnecessary to lengthen this opinion with an extensive collection of them. They are, so far at least as they may be said to be contemporaneous with the modern conception of the corporate nature, all to the same effect as those above referred to.

This distinction between the acts of an individual acting as agent for a corporation and the acts of persons who in the exercise of undelegated powers act in the primary role of the corporation itself, is to be extracted from the following cases: *Varderman v. Penn Mutual Ins. Co.*, 125 *Ga.* 117, 54 *S. E.* 66, 5 *Ann. Cas.* 221; *American Soda Fountain Co. v. Stolzenbach*, 75 *N. J. L.* 721, 68 *Atl.* 1078, 16 *L. R. A.* (*N. S.*) 703, 127 *Am. St. Rep.* 822; *Glucose Sugar Refining Co. v. St. Louis Syrup & Preserving Co.* (*C. C.*), 135 *Fed.* 540; *Bank of Toronto v. McDougall*, 15 *U. C. C. P.* 475.

Thus far we have attempted to demonstrate that the acts of the directors or the governing body of a corporation are the acts of the corporation itself. We do not mean, of course, to say that there is no limit which may te set to the acts of the controlling body, or that the corporation is to be assumed to be bound under any and all conceivable cirumstances by acts to which the directors might assume to commit it. We refrain, however, from endeavoring to designate the precise metes and bounds of the directors' authority, a task which would lead us to digress too far into the rather wide field of learning embraced within the doctrines of *ultra vires*. At a later place in this opinion we shall venture far enough into this field to discuss whether, with respect to such an act as is here involved, there is any consideration inherent in the principles applicable to the corporate nature which would make it impossible for it through its governing representative to burn its own property. For the moment we shall assume that there is not.

On this assumption, would it be possible to say that the act of Rachlin in causing the merchandise to be burned, if he did, is to be regarded as though it were the act of the directors or governing body?

· We think it would be. If this be so, then it follows that we are in no wise concerned with the question of agency or its related doctrine of respondeat superior. We, therefore, are constrained to disagree with the fundamental contention of the plaintiff below that the question here involved is to be determined by the rules which courts have formulated in applying that doctrine. For this reason we do not regard as pertinent those authorities to which we are cited wherein it is held that a principal is entitled to recover for a loss under a fire insurance policy notwithstanding the fire was willfully set by his agent, unless it is shown that the act of the agent was done by the authority, connivance or consent of the principal.

The evidence in this case is such as to warrant the jury in concluding that Rachlin beside being general manager was in substance the board of directors. The authorities hold what sound reason requires, that when an officer of the corporation is allowed to perform the functions of the whole management of the corporation, the directors and stockholders abandoning to him the entire control of its affairs, what he does in the prosecution of the company's business is to be regarded as being the act and will of the directors and as fully expressive of the corporation's purposes as though formally authorized by the directors themselves. *Galbraith v. First Nat. Bank*, 221 *Fed.* 390, 137 *C. C. A.* 194; In *re Cincinnati Iron Store Co.*, 167 *Fed.* 486, 93 *C. C. A.* 122; *Cunningham v. German Ins. Bank*, 101 *Fed.* 977, 41 *C. C. A.* 609; *Nelson-Bethel Clothing Co. v. Pitts*, 141 *Ky.* 242, 132 *S. W.* 430. Counsel for the plaintiff below on one of their briefs in substance concede this principle.

If, therefore, Rachlin can under the evidence be regarded as exercising the powers of the governing body in the corporation, it must follow that if it was legally possible for the board of directors to commit the corporation to the consequences of a fire determined

by them to be set, Rachlin could likewise do so. The plaintiff be-low however very strenuously contends that the board of direc-tors could not even by the most formal action express a binding corporate intent and will to commit an act not only so tortious but as well so criminal as this alleged act was. Such an act, it is con-tended, was entirely unauthorized by the corporate charter and wholly *ultra vires*, and being so, no officer nor the board of direc-tors could do such an act in its behalf. This contention invites a discussion of those questions which once were debatable but are now so well settled by overwhelming authority as to be mostly of only academic interest. Out of the controversy concerning these questions has finally emerged the firmly established rule that the law will fasten upon corporations the same liability for torts as is imposed upon individuals. As observed by Mr. Machen in his work on Corporations, *vol.* 2, § 1072, "in one sense, every tort is *ultra vires*, for no corporation is founded for the purpose of committing wrongs against the person or property of others." Yet, as stated by Mr. Cook in *section* 156 of the first volume of his Treatise on the Law of Corporations (8th *Ed.*):

"After much discussion the general rule is now firmly established that corporations cannot make defence to actions in tort claiming that the acts by which the wrongs have been committed are not within the corporate powers conferred upon them."

Mr. Cook then proceeds to refer to a great number of cases in which corporations have been held liable for torts of all sorts, including those even which involve the element of malicious intent. We do not deem it necessary to engage in a discussion of this as-pect of the law. It is overwhelmingly settled. We may observe, however, that the fallacy which underlies the contention of the plaintiff below is that it fails to take note of the distinction between an authorized power and a capacity to do, a distinction on which is founded a good portion of the law of *ultra vires* as applied to corporations.

But we are not concerned here primarily with a question of tort. If this corporation burned its own property it committed no tort, though the act might have been intended as an aid in the perpetration of a fraud on the insurance companies. One cannot

commit a tort against himself. The proper light in which to view the matter is this—was not the alleged act of incendiarism committed for the purpose of profiting the corporation as an insured? It will not do to say that a corporation never can find it to its own interest to burn its own property. Experience shows . that individuals are often prompted by what they conceive to be self-interest to set fire to their own property when the same is protected by insurance. Why may not corporations at times discover a like self-interest? Those in a corporation who have charge of its control are supposed to manage its assets in the way they regard as most advantageous to its welfare. If instead for instance of selling the personal property for a profit, those who do the thinking and planning for the corporation think it best to burn it up and collect much more than its value from an insurance company, in our judgment all that need be said about the matter is that such is the manner in which the responsible management deems it best to handle the corporate affairs. There may be more and a quicker profit in a debt-liquidating or money-making fire than could be obtained from the slow process of sale over the counter. Though no corporation is authorized to try to make money by such a method any more than an individual is, yet we can discover nothing in the corporate nature which robs it of a capacity to try the experiment any more than is found in the nature of an individual.

[5] We think the court below erred in not allowing the jury to determine whether or not the fire in question was set by the corporation, the plaintiff below. We should say further, that the mere fact that Rachlin was general manager of the plaintiff below would not justify the inference that if he caused the fire to be set his act in so doing could be attributed to his corporation. We do not subscribe to the doctrine of the unreported case of *Downey, Receiver, v. Hartford Fire Ins. Co., Dec.* term, 1913, *U. S. District Court of West Virginia* (a copy of the opinion in which case has been supplied to us), wherein it appears to have been held that the office of general manager in a corporation is such as carries with it authority so ample in scope as to warrant the conclusion that the

act of such an officer in willfully setting a fire is to be regarded as the act of the corporation. It appears to us that in that case, the doctrines of agency were unwarrantably set aside. If the case at bar comes on for another trial below, the jury should in substance be instructed first to inquire if from the evidence they find that Rachlin was authorized to act as the corporation in the primary sense of formulating its policies for it and directing its conduct as is the duty generally of the directors, and, second, if the first is answered affirmatively, to further inquire whether he caused the fire to be set for the purpose of advantaging the corporation. If his alleged act was not designed or intended by him to be for the benefit of the corporation, but to gratify some personal motive of his own, then it could not be said that he was acting for the corporation. The nature and extent of Rachlin's authority, the purpose he was intending to subserve and what, if anything, he actually did, are questions for the jury's determination.

This opinion is already extended to a greater length than we had hoped. We feel impelled, however, before concluding it to notice one aspect of the contention of the plaintiff below which was so forcefully presented on the briefs and at the argument. We refer to the contention as stated in the language of its counsel on their brief (quoted *supra*) where they say that the act of an officer of a corporation in willfully burning the property of the corporation cannot defeat the right of the corporation to recover on a policy of insurance covering such property, in the absence of any participation in such act by all, or substantially all, of the stockholders of the corporation. The view thus set forth by the attorneys for the plaintiff below was the view which the trial court adopted in its charge to the jury. Cases were cited by the plaintiff below in support of this view. Those cases are *Kirkpatrick v. Allemannia Ins. Co.*, 102 *App. Div.* 327, 92 *N. Y. Supp.* 466; *Meily v. London & Lancaster Ins. Co.* (*C. C.*), 142 *Fed.* 873, on appeal 148 *Fed.* 683, 79 *C. C. A.* 454; and *Felsenthal Co. v. Northern Assurance Co.*, 284 *Ill.* 343, 120 *N. E.* 268, 1 *A. L. R.* 602. These cases, we conceive, are clearly distinguishable from the one before us and supply no aid to us in arriving at our decision.

They are all cases where it appeared that the person who set the fire was the sole person interested in the corporation and who would be the sole beneficiary of the payment of the insurance money. His act of incendiarism was held to constitute a good defense to an action by his corporation on the policy contract. Manifestly those cases are quite distinguishable from this one. Their facts do not call for the laying down of a rule, nor do the courts deciding them assume to do so, to the effect that in order to defeat a corporation in a suit on a fire insurance policy on the ground of a fire willfully set, it must be shown that "all or substantially all of the stockholders" participated in the act of incendiarism. If such a rule were accepted, we are at loss to know just how in its practical application it could be worked out. What proportion of the stockholders, for instance, would have to be shown as participating in the act in order to make them "substantially all"? Would a mere majority suffice? If not, what percentage above fifty and below one hundred would suffice? What right would ninety-nine per cent. possess to so misbehave as to defeat the rights of an innocent one per cent. which reason would deny to the latter by a like misbehavior to defeat the former? Rights cannot be made to thus turn on comparative numerical strength.

The suggested rule is highly impracticable. Further more, it ignores completely the nature and character of the corporate creature and treats the insurance contract as though it were not made with the corporation, one of its formal parties, but with the corporation's stockholders. If this be the correct point of view, would it not be proper to regard the stockholders, so far as the insurance contract is concerned, as in the same status as jointly insured partners? Yet the rule contended for would repudiate the consequences of such a partnership status by relieving the innocent members if they are substantial in interest from the burden of the wrongful act of their guilty associate or associates in willfully setting the fire, a thing which it has been held is not countenanced in the case of joint insurance extended to partners.

To the suggestion that if the view contended for be accepted it would be difficult to formulate a legal principle governing re-

covery by corporations against insurance companies where some, but not all, of the stockholders are guilty of the willful burning, the attorneys for the plaintiff below make this response: first, that the company could have relief in equity against the payment of so much of the money as would represent the share of the guilty stockholders, and, second, that a mere majority might be held to constitute such a substantial number as would defeat altogether any right to recover. The latter suggestion is admitted by the counsel making it to be of questionable soundness. So clearly is it so that we pass it by. The former, we think, is equally unsound. We are unable to see by what right the insurance company could be driven to resort to a suit in equity to restrain the collection of part of a judgment recovered against it when the circumstance which would necessitate its resort thereto is something which if there be merit in it is due solely to the peculiar situation and behaviour of persons interested in its corporate contractee. In order to do complete justice in the matter, pursuing the logic of the plaintiff below a step further, would not a necessary corollary of the foregoing be that the innocent stockholders would be entitled to maintain still another suit in equity to restrain their guilty associates from reaping the benefit of the money paid to the corporation as representing the interest of innocent stockholders? How could this be done, short of winding up the corporation and distributing its assets on the basis, so far as the insurance money is concerned, of guilt and innocence among the stockholders? We need not pursue this argument any further. It leads to inextricable confusion.

If, as contended by the plaintiff below, the governing directors of a corporation are in a position to do great wrong to the innocent stockholders who have intrusted them with their confidence in case the views we have herein expressed are the law, it might also be said that if the rule contended for by the plaintiff below be accepted the innocent stockholder would be equally at the mercy of his culpable fellows. We see no reason to depart from the well accepted theories regarding the corporation, its directors, officers and stockholders, and their self-chosen relationships,

in deciding the question before us, especially when in order to do so we would but be led into confusion and great impracticability.

For the reasons above stated, the judgment of the court below must be set aside and the case remanded for retrial in accordance with this opinion.

HARRINGTON and RICHARDS, J. J., concurred in the opinion of the Chancellor.

PENNEWILL, C. J. (concurring). I concur in the conclusion of the majority of the court, that the judgment below should be reversed, and do not dissent from the opinion; but prefer to base my decision on a different ground.

It seems to me that under the facts in the case the jury would have been warranted in finding that the true relations existing between Robbins and Rachlin were not those of corporation and general manager, but of partners, or creditor and debtor. If they were partners, or Robbins was only a creditor of Rachlin and the plaintiff corporation was such in name only, there could be no recovery if Rachlin willfully caused the fire. It is conceded that if the owner, or one of the joint owners of insured property willfully burns it, there can be no recovery on the policy.

For the reasons stated in the majority opinion I think there was sufficient evidence to warrant the jury in finding that the fire in question was of incendiary origin, and also that Rachlin indirectly caused it.

And, the facts that convince the majority of the court that Rachlin was not only general manager, but to all intents and purposes the corporation itself, convince me that there was no corporation at all except in name. That, it seems to me, is what the majority opinion really means. According to the evidence the corporation never functioned as such; it is not clearly shown that there were any meetings of directors, or that there were any directors. The only fact or circumstance which even indicates that there was a real corporation, is the testimony that Robbins was its president, and stock was issued to him and Rachlin. There was no stock issued to any one else.

But Robbins never performed any corporate act, or any act at all in connection with the business. The corporation bore Rachlin's name and its advertisement his picture. To my mind the evidence strongly indicates that Robbins and Rachlin were jointly and individually interested in the business either as partners or as creditor and debtor, and that the corporate form was adopted for the sole purpose of limiting the personal liability of one or both for debts that might be incurred in connection with the business.

At any rate, I believe there was testimony from which the jury might have found such facts, and for that reason the evidence relating to the dishonesty of the fire should not have been stricken from the record.