# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SUMMIT HEALTHCARE OPERATING PARTNERSHIP, L.P. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2025-1258-JTL |
| BEST YEARS, LLC, | ) ) | |
| Defendant. | ) ) | |

## OPINION ORDERING PRODUCTION OF TRIAL WITNESS

Date Submitted: March 3, 2026
Date Decided: March 4, 2026

Robert A. Penza, Stephen J. Kraftschik, Andrew H. Meck, POLSINELLI PC, Wilmington, Delaware; *Attorneys for Plaintiff Summit Healthcare Operating Partnership, L.P.*

Travis S. Hunter, Richard P. Rollo, Gabriela Z. Monasterio, Benjamin O. Allen, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Michael S. Doluisio, DECHERT LLP, Philadelphia, Pennsylvania; David A. Herman, DECHERT LLP, New York, New York; Mary H. Kim, DECHERT LLP, San Francisco, California; *Attorneys for Defendant Best Years, LLC.*

**LASTER, V.C.**

The defendant asked the plaintiff to produce a witness at trial. The plaintiff declined. The defendant moved for an order compelling the plaintiff to produce the witness on pain of sanction, arguing that the witness is the plaintiff's managing agent. This decision grants the defendant's motion. But the court will allow the witness either to (1) appear in-person at trial or (2) testify remotely for no more than two hours at a time within the next two weeks.

## I.    FACTUAL BACKGROUND

The facts come from the parties' submissions in connection with the motion to compel.[1] Given the procedural posture, this decision does not make formal findings of fact in the post-trial sense. Instead, the following summary reflects how the record appears at this stage of the proceedings for purposes of this ruling.

### A.    The Joint Venture

Summit Healthcare Operating Partnership, L.P. ("Summit") is a Delaware limited partnership. Summit's general partner is Summit Healthcare REIT, Inc. (the "REIT"), a Maryland corporation. As Summit's general partner, the REIT manages Summit's affairs.

Best Years, LLC is a Delaware limited liability company. Best Years' parent is Union Life Insurance Co., Ltd. ("Union Life"), a Chinese insurance company.

---

[1] Citations in the form "Ex. __ at __" refer to exhibits to the defendant's motion to compel. *See* Dkt. 71. Citations in the form "JX __ at __" refer to trial exhibits. Citations in the form "[Name] Dep." refer to witness testimony from a deposition transcript.

In April 2015, Summit and Best Years established a joint venture to own skilled nursing, assisted living, memory care, and independent living facilities. They formed Summit Union Life Holdings, LLC ("Holdco") as the vehicle for the joint venture. Summit owns a 10% member interest in Holdco, and Best Years owns a 90% member interest.

**B.      The Negotiations**

In April 2025, Summit proposed to buy Best Years' ownership interest in five skilled nursing facilities. Summit and Best Years began negotiating terms.

On June 19, 2025, Bin Feng, Best Years' sole employee, emailed Elizabeth Pagliarini, Summit's CEO. He told her Best Years was "aligned on moving forward at the $16 million purchase price" but wanted "a brief summary memo outlining the key business terms to help ensure mutual understanding and support our internal review and approval process."[2] Feng told Pagliarini that Best Years "will begin our internal approvals promptly while your counsel proceeds with drafting [a transaction agreement]."[3]

On June 20, 2025, Pagliarini emailed the summary memo to Feng. On June 25, Feng texted Pagliarini that Best Years had "a few questions about the memo."[4]

---

[2] JX 69.

[3] *Id.*

[4] JX 49.

2

He asked for responses as soon as possible because Union Life's investment committee (the "Committee") was slated to discuss the proposed sale the next day.[5]

From July 5 to July 31, 2025, Summit and Best Years exchanged drafts of a Membership Interest Purchase Agreement (the "Agreement"). On July 31, Pagliarini asked Feng if he "still need[ed] to get final [Committee] approval before signing."[6] Pagliarini then sent an "execution version" of the Agreement.[7]

On August 1, 2025, Feng told Pagliarini that "there shouldn't be any further [Committee] approvals needed," and "[i]t's just going through the usual review steps before we get the final signature."[8] But Feng added, "Let's wait to hear back from our attorney."[9]

On August 12, 2025, Feng notified Pagliarini that Union Life was "still reviewing" the proposed sale, which was "still going through the internal approval process."[10] On September 3, Feng reported to Pagliarini that "the approval's been delayed since regulation got stricter and they need more review time."[11]

---

[5] *Id.*

[6] JX 118.

[7] JX 121.

[8] JX 124.

[9] *Id.*

[10] JX 132.

[11] JX 141.

On September 5, 2025, Feng notified Pagliarini that "[t]he regulator wants to pause the sale."[12] Internally, Union Life was concerned about macroeconomic and geopolitical factors, as well as obtaining regulatory approval from China's National Financial Regulatory Administration.

Summit and Best Years never executed the Agreement.

**C.      This Litigation**

On October 10, 2025, Summit demanded that Best Years perform under the Agreement or face a lawsuit. On October 24, Best Years disputed Summit's contentions and represented that its review process remained ongoing.

On October 31, 2025, Summit filed this lawsuit.[13] Summit seeks declaratory relief establishing that (i) Summit and Best Years formed a binding contract, (ii) Best Years breached the contract, and (iii) Best Years is not excused from performing. Summit separately asserts that Best Years breached a contract under which Best Years was obligated to execute the Agreement, deliver closing documents, cooperate with the U.S. Department of Housing and Urban Development, escrow funds, and ultimately sell its interests in the five facilities to Summit. Alternatively, Summit asserts that Best Years' conduct breached the implied covenant of good faith and fair dealing. Summit seeks a decree of specific performance.

Trial is scheduled for March 6, 2026.

---

[12] JX 142.

[13] Dkt. 1.

4

**D.     The Motion**

On February 23, 2026, Best Years moved to prevent Summit from relying affirmatively at trial on the deposition of Brenda Daw.[14] The court denied the motion, finding that Summit could use the deposition under Rule 32 because there was no showing that Summit procured Daw's absence from Delaware.[15]

On March 2, 2026, Best Years moved to compel Summit to bring Daw to testify live at trial on March 6.[16]

## II.     LEGAL ANALYSIS

"Through its jurisdiction over a corporation, a court can compel the biological persons who serve as its directors, officers, and managing agents to appear as witnesses at trial or for a deposition in a particular location."[17] In other words, "[t]he

---

[14] Dkt. 52.

[15] Dkt. 65.

[16] Dkt. 71.

[17] *In re Dole Food Co., Inc. S'holder Litig.*, 110 A.3d 1257, 1262 (Del. Ch. 2015). *See In re Activision Blizzard, Inc.*, 86 A.3d 531, 552 (Del. Ch. 2014) ("Through its jurisdiction over Vivendi, this court can compel Vivendi's directors, officers, and managing agents to appear at trial or for a deposition in a particular location."); *Hamilton P'rs, L.P. v. Englard*, 11 A.3d 1180, 1214 (Del. Ch. 2010) ("[T]hrough its jurisdiction over NYHC and Bio Balance, this Court can compel production of (i) documents in the entities' possession, custody, or control, (ii) corporate representatives pursuant to Rule 30(b)(6), and (iii) officers, directors, and managing agents of the firms pursuant to Rule 30(a). . . . Through its jurisdiction over NYHC and Bio Balance, this Court similarly can compel the appearance at trial of directors, officers, and managing agents of the corporate entities."); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1997 WL 716898, at *1 (Del. Super. Aug. 18, 1997) ("It is within the power of this Court to compel the live testimony of a non-resident officer, director or managing agent of a Delaware corporate [party] which has availed itself to the jurisdiction of this Court."); *Dalton v. Am. Inv. Co.*, 1981 WL

5

same jurisdictional authority exercised in connection with the discovery process empowers the Court to issue trial subpoenas to officers, directors, and managing agents of a corporate party."[18]

The Court of Chancery Rules recognize this authority. They provide that a party can call a director, officer, or managing agent of an adverse party to testify at trial and interrogate the witness using leading questions:

> A party to the record in any action or judicial proceeding may interrogate any unwilling or hostile witness by leading questions. Such party may call . . . an officer, director or managing agent of a public or private corporation or of a partnership or association which is an adverse party, and interrogate the witness thus called by leading questions and contradict and impeach the witness in all respects as if the witness had been called by the adverse party.[19]

---

7619, at *1 (Del. Ch. June 9, 1981) (noting court's discretionary authority to order deposition at a particular location); *Lasher v. Sterwin Lab'ys*, 1980 WL 10017, at *1–2 (Del. Ch. Jan. 28, 1980) (ordering defendant corporation to produce witnesses for deposition in Delaware); 7 Daniel R. Coquillette et al., *Moore's Federal Practice—Civil* § 30.03, LexisNexis (database updated 2026) ("When the deponent is a corporation, the person designated to be deposed on behalf of the corporation must be an officer, director, or managing agent of the corporate deponent. . . . Furthermore, since only a party may be compelled to give testimony pursuant to a simple notice of deposition, it is important to determine whether a person is an officer, director, or managing agent of a corporate party or other entity. If not deposed as a representative of the corporate party, the witness must be subpoenaed."); 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2107 (3d ed. 2010), Westlaw (database updated Sep. 2025) [hereinafter Wright & Miller] ("A [third party] subpoena is not necessary if the person to be examined [by deposition] is a party or an officer, director, or managing agent of a party." (footnote omitted)).

[18] *Hamilton P'rs*, 11 A.3d at 1215.

[19] Ct. Ch. R. 43(b).

Federal authorities have reached the same conclusion.[20]

The power to compel operates against the party, not the out-of-state individual. "As during the discovery process, any consequence for the individual's failure to appear, including sanctions, adverse inferences, or other rulings, falls on the corporation, not the individual whom the corporation was compelled to produce."[21]

Those principles apply equally to LLCs. The court has jurisdiction over Summit. Through the court's jurisdiction over Summit, the court can compel Summit to appear at trial through its managing agent. If Daw is a managing agent, then the court can compel Summit to produce her.

## A. Managing Agent Status

A managing agent is "one who has general power involving the exercise of judgment and discretion."[22] "It is not necessary that the managing agent should have sole control of the corporation's affairs, nor be a general manager, nor have unlimited discretion."[23] An individual need not qualify as a managing agent for all purposes.

---

[20] *See Hamilton P'rs*, 11 A.3d at 1215 n.19 (collecting authorities).

[21] *Id.* at 1215–16. *See* Ct. Ch. R. 37(b)(2); *accord* Fed. R. Civ. P. 37(d) advisory committee's note to 1970 amendment ("The failure of an officer or managing agent of a party to make discovery as required by present Rule 37(d) is treated as the failure of the party.").

[22] *Goldman v. Shahmoon*, 208 A.2d 492, 494 (Del. Ch. 1965) (citing 9 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 4416).

[23] 9 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Corporations* § 4416, Westlaw (database updated Sep. 2025) (footnotes omitted).

The individual need only qualify as managing agent with respect to events that are significant to the claims at issue.[24] The test is functional, not formalistic.

In *Goldman*, this court adopted a three-part test to determine whether an individual "may be considered a managing agent and not a mere employee."[25] The test asks whether the employee is "(1) invested with power to exercise personal judgment and discretion in corporate matters; (2) may be depended on to carry out his employer's direction to testify when called upon by an adversary, and (3) is expected to identify his interests with those of the corporation rather than those of other parties."[26] "[D]oubts about an individual's status as a 'managing agent,' at the pre-trial discovery stage, are resolved in favor of the examining party."[27]

---

[24] *See* 8A Wright & Miller, *supra*, § 2107 n.2 ("Although employees may not be managing agents regarding their everyday duties, they may nonetheless be managing agents about testimony concerning important activities at issue in the litigation.").

[25] *Goldman*, 208 A.2d at 494.

[26] *Id.* (citing *Rubin v. Gen. Tire & Rubber Co.*, 18 F.R.D. 51, 55 (S.D.N.Y. 1955)); *accord Phila. Indem. Ins. Co. v. Fed. Ins. Co.*, 215 F.R.D. 492, 494 (E.D. Pa. 2003) ("To determine whether an employee is a managing agent, courts consider whether the individual is: '(1) invested with power to exercise his discretion and judgment in dealing with corporate matter, (2) can be depended upon to carry out employer's direction to give required testimony, and (3) has an alignment of interests with the corporation rather than one of the other parties.'" (quoting *M.F. Bank Restoration Co. v. Elliott, Bray & Riley*, 1994 WL 8131, at *2 (E.D. Pa. Jan. 11, 1994))).

[27] *In re Honda Am. Motor Co., Inc. Dealership Rels. Litig.*, 168 F.R.D. 535, 540 (D. Md. 1996); *accord AngioDynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 283, 296 (D. Mass. 2014), *aff'd*, 780 F.3d 429 (1st Cir. 2015).

The motion seeks to compel a witness to appear at trial, so Best Years does not get the benefit of the doubt. Best Years must carry its burden of meeting all three elements. It has for Daw.

### 1. The Individual's Power To Exercise Judgment And Discretion

The first factor is whether the entity has invested the individual with the power to exercise judgment and discretion on its behalf.[28] This factor takes into account the "functions, responsibilities and authority of the individual involved respecting *the subject matter of the litigation*."[29] The right to secure testimony from a managing agent would "be an empty right indeed if only those persons came within the category of 'managing agent' whose rank in the corporate hierarchy was so exalted that they would be extremely unlikely to have any knowledge of the day to day dealings."[30]

Here, Summit invested Daw with the power to exercise judgment and discretion on its behalf on matters relating to Holdco. Daw is the REIT's sole asset manager, and the REIT manages Summit as its general partner. Daw handles all of the portfolio reporting for Summit's assets, arranges and conducts site visits, and

---

[28] *Goldman*, 208 A.2d at 494 (citing *Rubin*, 18 F.R.D. at 55).

[29] *M.F. Bank Restoration Co.*, 1994 WL 8131, at *3 (emphasis in original) (internal quotation marks omitted).

[30] *Rubin*, 18 F.R.D. at 55.

maintains the dashboard. She handled "just about everything" related to the properties that the REIT buys and sells.[31]

Daw is Summit's principal representative at Holdco. She often engages with Feng, Best Years' sole employee, and is generally the only Summit representative on the regular monthly calls to discuss Holdco assets. Daw served as the primary point of contact at Summit for Best Years on several key transactions. Through those experiences, she became familiar with the internal approval processes at Best Years and Union Life.

Summit contends that Daw was not Summit's managing agent for purposes of the Agreement. According to Summit, Daw's responsibilities relate to operational matters at the five facilities, not whether the parties reached a deal. That is too fine a distinction. For purposes of the managing agent inquiry, Summit has entrusted Daw with the power to exercise judgment and discretion on its behalf for purposes of matters relating to Holdco. That is sufficient for purposes of this case.

## 2. The Individual's Reliability

The second factor is whether the individual "may be depended on to carry out his employer's direction to testify when called upon by an adversary."[32] That cumbersome framing gets at whether an objective observer would regard the

---

[31] Pagliarini Dep. 21.

[32] *Goldman*, 208 A.2d at 494 (citing *Rubin*, 18 F.R.D. at 55).

individual as able to speak on the entity's behalf with respect to the matters in dispute.

A court's ability to compel an entity to produce a director, officer, or managing agent recognizes the persistent reality that a jural entity "is an artificial being, invisible, intangible, and existing only in contemplation of law."[33] "[B]eing a purely metaphysical creature, having no mind with which to think, no will with which to determine and no voice with which to speak," a jural entity "must depend upon the faculties of natural persons to determine for it its policies and direct the agencies through which they are to be effectuated."[34] "Because of its lack of a body and mind, a corporation only can act through human agents."[35]

That is just as true for testimony. "Notwithstanding this definition and the various commercial and economic contexts in which the law appropriately personifies corporations, the Rules of Evidence make clear that a witness must be a biological person."[36] But because an entity lacks mind, body, and voice, an entity cannot testify.[37]

---

[33] *Trustees of Dartmouth Coll. v. Woodward*, 17 U.S. 518, 636 (1819).

[34] *N. Assur. Co. v. Rachlin Clothes Shop*, 125 A. 184, 188 (Del. 1924).

[35] *Dole Food Co.*, 110 A.3d at 1261 (collecting authorities).

[36] *Id.* at 1260.

[37] *Id.* at 1261.

To overcome that problem, "rules of procedure enable parties to obtain testimony from a knowledgeable . . . representative or to compel a corporation to produce an officer, director, or managing agent whose testimony will bind the entity."[38] For an individual's testimony to fairly bind the entity, however, the individual must be someone who can speak on the entity's behalf on the matter at issue. That does not mean an entity can defeat an application to produce an individual as a managing agent simply by denying the individual authority. The inquiry is necessarily objective.

Summit has demonstrated that Daw can speak on its behalf for purposes of matters relating to Holdco. Daw's day-to-day authority over Holdco matters demonstrates that. Likewise, in this litigation, Summit listed Daw in its interrogatory responses as both a person with knowledge and a person who assisted in preparing the responses themselves.[39] Summit's counsel also represented Daw during her deposition.

### 3. No Misalignment Of Interests

The third factor asks whether the individual would identify with the interests of the entity rather than an adverse party.[40] Because the managing agent's testimony operates as testimony on behalf of the entity, fairness demands that the managing

---

[38] *Id.* at 1262.

[39] Ex. A at 12, 14.

[40] *Goldman*, 208 A.2d at 494 (citing *Rubin*, 18 F.R.D. at 55).

agent not be aligned with the adverse party. The inquiry is again objective. A party cannot simply claim that it suspects the witness would go rogue. "[T]his requirement should be liberally interpreted because the determination that the corporation is or is not bound by the testimony of a person who was examined as its managing agent is to be made by the trial court."[41]

The same indications that show Daw can speak reliably on behalf of Summit demonstrate that her interests are aligned with Summit's. As an employee of the REIT, she is the REIT's agent and owes a duty of loyalty to her employer. The REIT in turn serves as Summit's general partner and owes a duty of loyalty to Summit. No one has pointed to any reason to think that Daw's interests would be aligned with Best Years.

## B. Exercise Of The Court's Discretion

Daw is therefore Summit's managing agent. But that does not mean the court *must* exercise that authority.[42] Delaware Rule of Evidence 611(a) states: "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue

---

[41] *Rubin*, 18 F.R.D. at 56.

[42] *See Saxe v. Brady*, 1961 WL 62158, at *1 (Del. Ch. Oct. 20, 1961) (recognizing that power exists to order the appearance at trial of non-resident officers and managing agents but declining to exercise authority).

embarrassment."[43] Here, those considerations call for compelling Daw to testify, but also giving her the option to do so in a manner that avoids a last minute cross-country flight to appear in person in two days.

Daw's testimony is likely to be probative on matters that will help the court determine the truth and resolve the case. Her functions, responsibilities, and authority as Summit's asset manager make her testimony significant. Her understandings about how Best Years has engaged in deals with Summit in the past could be important. She is also one of two principal Summit witnesses with personal knowledge of the events. Daw received nearly every relevant written communication beyond Pagliarini and Feng's text message exchanges. She also attended a monthly dashboard call where Best Years raised the status of the sale and Daw cited Summit's readiness to sue. She need not have negotiated the Agreement personally or been the ultimate decisionmaker for her testimony to be relevant and helpful.

Summit also points out that even if the court declined to require Daw to appear, Best Years would still have a witness to question. Summit is bringing Pagliarini to trial. On top of being Summit's CEO and a director, Pagliarini is (according to Summit) its most knowledgeable representative about the deal.

That might well be true, but Best Years is not required to accept only the witness that Summit proffers. Best Years can call on this court to use its subpoena power to secure testimony from other witnesses. Daw is a managing agent, so Best

---

[43] D.R.E. 611(a).

Years can seek to have the court compel Daw to testify, even though Pagliarini is coming to trial. Because Best Years should have the ability to present its case as it wishes, subject to Rule 611, Best Years' desire to elicit Daw's testimony carries heavy weight.[44]

The court will therefore direct Summit to produce Daw for trial. But the court will not require Daw to testify on March 6, 2026. Trial is currently scheduled for one day. If Summit wishes to produce Daw for trial on March 6, that is fine. But Summit has the option of producing Daw to testify remotely for no more than two hours (split equally between the parties) at a convenient time within the next two weeks.

### III.    CONCLUSION

Summit must produce Daw to testify at trial. By 9:00 a.m. on March 5, 2026, Summit must inform Best Years whether Daw will appear for trial on Friday or testify remotely.

---

[44] *Rubin*, 18 F.R.D. at 55–56 (rejecting similar argument).