55 N.J. Super. 205 (1959)
150 A.2d 276
MILLER & DOBRIN FURNITURE COMPANY, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
THE CAMDEN FIRE INSURANCE COMPANY ASSOCIATION, A NEW JERSEY CORPORATION, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 17, 1959.
*211 Mr. Bernard Hellring, attorney for plaintiff.
Messrs. Toner, Crowley, Woelper & Vanderbilt (Mr. Marshall Crowley, attorney for defendants).
SCHERER, J.S.C.
Plaintiff, a New Jersey corporation, sued 19 insurance companies for losses sustained as the result of a fire which occurred at its furniture store, 184 Market Street, Passaic, New Jersey, on November 6, 1956. The losses fall into three categories and there are three sets of policies. In the order set forth in the complaint, the first claim involves damage to the building; the second, damage to the stock and fixtures; and the third, the loss resulting from the interruption of business.
The defendants filed a joint answer containing six separate defenses, in which they allege that they have no liability to the plaintiff because of violations of several provisions of the policies. These defenses, in brief, charge that the plaintiff (1) willfully and fraudulently concealed and misrepresented (a) the origin and cause of the fire, (b) the amount and value of the property involved, (c) the business and financial affairs of the corporation, and (d) the financial transactions between the plaintiff and its officers, directors and stockholders; (2) failed, through its officers and directors, *212 to use reasonable means to preserve the property at and after the loss; (3) increased the hazard by means within the knowledge or control of the plaintiff; (4) caused the fire to be set by an officer, director and agent of the plaintiff; (5) concealed the fact that the fire had been intentionally set; and (6) caused the fire to be set by one Harry Miller, who owned or controlled a substantial amount of the stock of plaintiff, exercised substantial management and control of the business and financial affairs of plaintiff and was its secretary, treasurer and director, and who, with another stockholder, Abe Dobrin, actually operated the plaintiff corporation "substantially" as a partnership. At the close of the case the defense of increasing the hazard was withdrawn, there being no proof offered sustaining this charge.
The trial was a protracted one. The testimony and exhibits were voluminous, and no attempt will be made to discuss all of the evidence because to do so would inordinately extend the length of this opinion.
The fire, which occurred in the early morning of November 6, 1956, was of great intensity and caused extensive damage. Harry Miller, who was at the time of the fire, and had been for many years, secretary, treasurer, director and one of the principal stockholders of the plaintiff, had been seen in the store premises by two witnesses at between 5:15 and 5:45 on the morning of the fire. This apparently aroused the suspicions of the police and fire authorities of the City of Passaic, and Harry Miller was questioned on the day of the fire and then arrested for arson. He was indicted and tried in the Passaic County Court, where he was acquitted. Many of the witnesses who testified in this case had been witnesses in the criminal trial, and many of the exhibits placed in evidence here had been used in that trial.
The fire, which was reported first to the Passaic Fire Department by a still alarm at 5:59 A.M. on November 6, 1956, was of such severity that several other alarms were sent in by the fire department officers on the scene, and finally a general alarm was sounded at 6:17 A.M.
*213 After the fire the plaintiff filed proofs of loss as to the building, merchandise and fixtures, and for business interruption. These claims total almost $166,000. Total insurance in force was $326,000. In its proofs of loss, dated January 2, 1957, sworn to by Abe Dobrin as president, plaintiff stated that the cause of fire was "Undetermined."
The first question to be determined is whether or not the defendants have established, by a preponderance of the evidence, their principal defenses  that Harry Miller either set fire to the store premises or knew when he was in the building on the morning of November 6 that there was a fire burning and did not give the alarm. His acquittal in the criminal trial does not preclude a finding in this case that the fire was set by him. Even if he did not set the fire, but found it burning that morning and did nothing about it, this conduct, if established, could result in the defendants escaping liability under their policies because of the provisions which require the plaintiff to use all reasonable means to save and preserve the property insured.
But a finding that Harry Miller did set the fire would not of itself result in a verdict in favor of the defendants. In order to reach that result it must also be found that he was a person who would substantially benefit from the payment of the insurance, such as a principal stockholder; that he dominated the affairs of the plaintiff and that the other officers, directors and stockholders permitted him so to do, thereby becoming legally bound by his acts.
It is axiomatic that fraudulent losses are necessarily excepted from a fire policy upon the moral principle that no man can be permitted in a court of justice to allege his own turpitude as a ground for recovery in a suit. Cf. 14 R.C.L. 1223; 52 A.L.R. 805.
It seems clear from the testimony, the photographs and a physical inspection of the property by the court that the fire started in the basement in an area directly under the first-floor office. The area in the basement has been referred to throughout the trial as the "storage area" and will *214 be so referred to herein. Plaintiff endeavored to show that the fire might have started between the basement ceiling and the flooring on the first floor and burned downward and upward. The weight of the evidence does not support that theory. The fire department representatives gave as their opinion that the fire had its source in the basement storage area, burned upward into the first-floor office space and outward into the basement display area and up the stairway which leads to the first floor. The area of the greatest destruction was the storage area and the first floor immediately above it.
While the defendants have raised numerous objections to making payment under the policies, their principal defense is that Harry Miller set the fire or, alternatively, if he did not, he knew when he was in the building in the early morning of November 6, 1956 that a fire was raging in the basement and did nothing, but allowed the building to burn. In either case, under the terms of the policies, this could provide a basis for relieving the defendants from payment.
Did Harry Miller set the fire? There were no witnesses to the act and no direct evidence of his participation. The circumstantial evidence must therefore be examined.
Before analyzing this evidence, and bearing in mind that the defendants must carry the burden of proof of this defense, a statement of the applicable rules of law is apropos.
In Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127 (1958), the court said:
"* * * But the issue, after all, as in other civil cases, is whether the burden of proof has been sustained. `Reasonable probability' is the standard of persuasion, that is to say, evidence in quality sufficient to generate belief that the tendered hypothesis is in all human likelihood the fact. Does the evidence reasonably give rise to a circumstantial inference of the requisite causal relation? Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil issues, is defined as `a mere preponderance of probabilities, and, therefore, a sufficient basis for decision.' Jackson v. Delaware, L. & W.R.R. Co., 111 N.J.L. 487 (E. & A. 1933). It need not have the attribute of certainty, but *215 it must be a presumption well founded in reason and logic; mere guess or conjecture is not a substitute for legal proof. The determinative inquiry is whether the evidence demonstrates the offered hypothesis as a rational inference, that is to say, a presumption grounded in a preponderance of the probabilities according to the common experience of mankind. The accepted standard of persuasion is that the determination be probably based on truth. A bare quantitative preponderance is not enough. The evidence must be such in quality as to lead a reasonably cautious mind to the given conclusion. The measure of the weight of the evidence is `the feeling of probability which it engenders.' Joseph v. Passaic Hospital Association, 26 N.J. 557 (1958)."
See also, Eberhard v. Eberhard, 4 N.J. 535, 545 (1950), where it is said that the proof must have sufficient probative force to support a legal inference, as contrasted with a mere speculation.
In Farber v. Boston Ins. Co., 215 Mo. App. 564, 256 S.W. 1079 (Mo. Ct. App. 1923), a case involving facts somewhat similar to those here, the court said that circumstantial evidence in a civil case need not exclude every other reasonable hypothesis than the truth of the fact sought to be proven, but it is enough if the trier of the fact can reasonably find such fact from the circumstances without piling inference upon inference.
With these rules in mind, let us examine the evidence.

* * * *
(Here the court analyzed the evidence as to the fire, and the activities of Harry Miller prior to, at and after the fire.)

* * * *
From all of the evidence, I conclude that the fire started in the basement storage area. The evidence preponderates in favor of the conclusion that Harry Miller went to the store the morning of November 6 and set the fire in the manner described by Brady. The evidence, although circumstantial, is sufficiently persuasive to lead a reasonably cautious mind to the feeling of probability that the fire occurred as described by the defendants' witnesses, and I so find as a fact. Ciuba v. Irvington Varnish & Insulator Co., supra.
*216 But, even if I entertained any doubt on that score, it seems beyond question that at the time Miller was in the store on the morning of November 6 the fire must have been burning, and if he did not start the fire, he could not fail to have been aware of its presence when he left the building at about 5:40 or 5:45 A.M. If this be so, as an officer, director and principal stockholder of plaintiff he failed to use all reasonable means to save and protect the insured property from loss, as required by the terms of the policies, thus, under the facts here present, giving the defendants a right to deny liability.

* * * *
(Here the court analyzed the evidence concerning plaintiff's contentions as to the activities of Harry Miller at the time of the fire and as to motive. The Court found the claim that Harry Miller lacked physical and mental capacity at the time of the fire to be without merit. It also found an evident motive for the fire  to collect enough insurance to rescue the company from its precarious financial condition.)

* * * *
A finding of fact that Harry Miller started the fire, or permitted it to burn without giving the alarm, does not of itself warrant a finding for the defendants. The insured is a corporation, a separate entity from its stockholders. Before the stockholders, who may be innocent of wrongdoing, can be precluded from recovery, the court must be convinced that the defendants have proven by a preponderance of the evidence that the corporate fiction should be disregarded. This, in turn, requires a finding that Harry Miller was the dominant force in the affairs of the plaintiff, and that the other parties in interest in the corporation permitted him to so control the affairs of the corporation that legally they may be held responsible for his acts and precluded from recovering for his wrongdoing.
*217 That the corporate fiction may be disregarded in order to prevent fraud was decided in Irving Investment Corp. v. Gordon, 3 N.J. 217, 223 (1949), where the court held that the corporate form may not be used as a shield to perpetrate injustice. See also, 1 Fletcher, Cyclopedia of Corporations (perm. ed), sec. 41, pp. 134 et seq.; State ex rel. Attorney General v. Standard Oil Co., 49 Ohio St. 137, 30 N.E. 279, 15 L.R.A. 145 (Sup. Ct. 1892).
When the corporate cloak is used as a subterfuge to justify wrongdoing, it will be disregarded. MacFadden v. MacFadden, 46 N.J. Super. 242 (Ch. Div. 1957); In re Greenberg, 21 N.J. 213, 220 (1956); Gelber v. Kugel's Tavern, Inc., 10 N.J. 191 (1952); 13 Am. Jur., secs. 7, 8; Gardner v. The Calvert, 253 F.2d 395 (3 Cir. 1958).
In Schmid v. First Camden National Bank, 130 N.J. Eq. 254 (Ch. 1941), it was said that a corporation is an entity wholly separate and distinct from the individuals who compose and control it, and that the fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other purpose it may be contradicted, and that the corporate cloak may not be utilized as a subterfuge to justify wrong or perpetrate fraud. To the same effect is Cohen v. Dwyer, 133 N.J. Eq. 226 (Ch. 1943), affirmed 134 N.J. Eq. 350 (E. & A. 1944).
On the question of whether the insured corporation is precluded from recovery on its policies, where one of its officers or stockholders is found to have been the individual who set the fire, the leading cases appear to be Northern Assur. Co. v. Rachlin Clothes Shop, Inc., 2 W.W. Harr. 406, 125 A. 184 (Del. Sup. Ct. 1924); Meily Co. v. London & Lancashire Fire Ins. Co., 148 F. 683 (3 Cir. 1906); Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359 (5 Cir. 1945); Kimball Ice Co. v. Hartford Fire Ins. Co., 18 F.2d 563, 52 A.L.R. 799 (4 Cir. 1927); D.I. Felsenthal Co. v. Northern Assur. Co., 284 Ill. 343, 120 N.E. 268, 1 A.L.R. 602 (Ill. Sup. Ct. 1918); Fidelity-Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co., 3 F.2d *218 784 (4 Cir. 1925). See also, 29 Am. Jur., Insurance, secs. 1028, 1029; 36 C.J.S., Fires, secs. 11, 12; 52 A.L.R. 805.
From these authorities the rule seems well settled that the fact that property was intentionally burned by the insured's agent does not defeat a recovery, where the insured was not implicated in the act. 29 Am. Jur., Insurance, sec. 1028.
In the case of a partnership, however, an innocent partner cannot recover on an insurance policy on partnership property which has been willfully burned by a copartner. Bellman v. Home Ins. Co., 178 Wis. 349, 189 N.W. 1028, 27 A.L.R. 944, 948 (Wis. Sup. Ct. 1922).
The above authorities hold that an insured corporation will not be allowed to recover on fire insurance policies, where the incendiarist owns all, or practically all, of the stock of the insured corporation, or is in exclusive management of the corporate property. The principle involved is that no one should be allowed to benefit by his own wrongdoing, and therefore the corporation should not be permitted to recover, since the recovery will redound to the benefit of the principal holder of its stock, the incendiarist.
In Fidelity-Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co., supra, the mortgagee of corporate property protected by fire insurance policies owned one-fourth of the stock of the company and was its president. The court held that he was not a substantial owner of the corporation and that his incendiarism in destroying the property was not imputable to the mortgagor corporation so as to preclude it from recovery on the policies. The court, however, did decree that no part of the insurance payment should go to the mortgagee but should be paid to other creditors and stockholders. See also, Merchants Ins. Co. v. Lilgeomont, 84 F.2d 685 (5 Cir. 1936); Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., supra.
In Kimball Ice Co. v. Hartford Fire Ins. Co., supra, the court held that a corporation could not recover on a policy of fire insurance, where the property was intentionally burned *219 by the general manager, who owned one-fourth of the entire capital, was a large creditor of the company (which was insolvent), and was in exclusive control of its management, even though other officers and stockholders did not know of, or participate in, the incendiarism.
The rule in this State is well settled that when the board of directors abandons control of the affairs of the corporation to one officer or manager his act will be considered the act of the corporation and binding upon it. Stokes v. New Jersey Pottery Co., 46 N.J.L. 237 (Sup. Ct. 1884); Morris County B. & L. Ass'n. v. Walters, 123 N.J. Eq. 548 (E. & A. 1937); Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558 (App. Div. 1951).
While the rule, as stated by the cited authorities, refers to a situation where the incendiarist owns all, or practically all, of the stock and has exclusive management control, I do not conceive that it need be limited to these precise situations. In this case Harry Miller was a 50% owner of the corporation, as will be hereafter demonstrated. He largely dominated the affairs of the company. In the situation here presented, a finding that he started the fire will be sufficient to ban the plaintiff from recovery on the principle that no one should be allowed to benefit by his own wrongdoing. To hold that the rule does not apply in this case because Harry Miller owned only 50% of the stock, instead of all or practically all of it, would enable him to profit by his own wrongdoing to the extent of 50% of the amount of the recovery. This would render a salutory principle of law ineffective. The rule should be applied after consideration not only of the stock situation, but of all other pertinent facts.
An interesting discussion on the problem of the right of the insurance company to avoid liability, where the acts of the insured indicate gross negligence amounting to a fraudulent design, or a failure of the insured to use all reasonable means to protect the insured property, is found in Orient Ins. Co. v. Cox, 218 Ark. 804, 238 S.W.2d 757, 26 A.L.R.2d *220 799 (Ark. Sup. Ct. 1951). See also, 5 Appleman, Insurance Law and Practice, sec. 3114; 6 Couch, Cyclopedia of Insurance Law, sec. 1479.
Let us now consider the proofs bearing on Harry Miller's association with the plaintiff to ascertain whether, under the above cited rules, recovery is precluded. It is evident from what has been said above that Harry Miller and Abe Dobrin operated the plaintiff under the guise of a corporation, but actually as a partnership. When the corporation was first organized, Miller and Dobrin were the principals. The testimony clearly discloses the domination of Miller over the affairs of the company right down to the date of the fire. For example, consider his large indebtedness to the company in his personal account, as contrasted with Dobrin's modest account. Referring to Miller's large indebtedness, Abe Dobrin said that he would rather it had been different, but "basically, I was not in a position to question what Harry Miller did about the finances of the company," and again, "but it was something that I accepted in my relationship with Mr. Miller," and "I was not happy about it," but "I accepted it because of our relationship through the years and it was something I just sort of lived with." It is not open to question that Miller secured most, if not all, of the loans for the company in the last several years and attended to its financial problems. Mr. Solomon testified that when money was needed he went to Mr. Miller because the latter had sources from which it could be secured. On several occasions during the course of depositions and the trial, both Miller and Dobrin used the expression that they were "partners," or "equal partners."
The minute book of the corporation has never been written up  not even the incorporators' meeting was held. Only one set of minutes appears to be in existence  that of a meeting alleged to have been held September 23, 1952, having to do with the liquidation of Continental Realty Company, a wholly-owned subsidiary of the plaintiff which held title to the Clifton warehouse. At that meeting there was a readjustment *221 of the stock holdings, based not upon anything reflected in the books but, as Mr. Solomon testified, it was the way he thought the stock ought to be issued. The original stock book is not in existence.
There are in evidence numerous affidavits signed by Harry Miller, as secretary, attesting to special meetings of the board of directors of the plaintiff held in connection with various loan transactions, and in each of these affidavits Mr. Miller swore that meetings had been held, that resolutions had been adopted, and that he and Dobrin had been authorized and directed to make the loans and execute the various documents. There seems little doubt that such meetings were not actually held. It should be pointed out that these were not certified copies of resolutions, which as secretary he would normally sign, but are affidavits. If Miller was not the dominant personality, why did he sign the affidavits, rather than Dobrin, who was the president? Why did he negotiate all the loans? Why did Solomon seek him out when the company required money?
Mr. Miller's testimony leaves no doubt that he was running the company because he testified on various occasions, "I sold the building"; "I made the deal with Cohen for the loans"; and that the individuals from whom money was secured were his friends and contacts. Neither Dobrin nor Solomon, the other two active officers of the company, disputed this in the slightest degree when they testified.
There was some attempt to show that Miller was not active, that he was merely consulted as a matter of courtesy, but I find the evidence to be to the contrary. A picture was attempted to be drawn of Miller being too ill and emotionally disturbed to take any active part in the business. This illusion is completely demolished by the testimony of the plaintiff's own witnesses, as well as by other evidence.
The former bookkeeper of the company testified that when Harry Miller gave her money obtained from loans from various sources he told her to put it through his account, and she did so. She said that she did whatever Harry Miller *222 or Abe Dobrin told her to do. This witness also testified, in connection with the drastic reduction in 1956 of the indebtedness of Harry Miller to the company, that she credited his account with some $23,600 of loans in April 1956, which resulted in a large reduction of his indebtedness to the company.
With respect to the interest of Harry Miller in the company at the time of the fire, plaintiff attempted to show that he was a minority stockholder and, therefore, under the above cited authorities, his wrongful conduct could not affect the right of the other stockholders to secure payment of the insurance. The evidence does not sustain this position. The original stock book is said to have been lost. In 1952, when the directors' meeting above referred to was held, new stock was issued, taking into consideration not only the original issue, which was ten shares, but also the fact that there had been issued to Continental Realty Company ten shares of Miller & Dobrin stock, making 20 shares of plaintiff's stock outstanding. Examination of the new certificate book shows that at the time the new certificates were issued one share was placed in the name of Samuel Miller, marked "original issue," although there is no denial of the fact that when this company was started Harry Miller and Abe Dobrin were the only owners. Aside from this one share, all other stock issued to Samuel Miller and the stock issued to Frances Miller Solomon are shown in the stock book as being transferred from Harry Miller. There was some attempt made to show that both Samuel Miller and Frances Solomon bought this stock from their father. I do not believe this to be the fact. The year of the alleged purchase of the stock by Frances from her father is 1954, and this was attempted to be proven by her income tax returns. One stock certificate for two shares was issued to her in 1950, and another for two shares in 1952. The certificates are still in the book and have never been torn out. Mrs. Solomon, who gave her testimony on deposition, *223 was completely vague as to the transactions, and Mr. Solomon's testimony did not shed any light on what occurred. Samuel Miller was not produced to testify about his stock. Four certificates were issued in his name and bear dates between 1948 and 1952. Like Mrs. Solomon's, the certificates have never been torn out of the book. Since there never have been any stockholders' meetings, no evidence of the stock holdings is available from that source. I find as a fact that at the time of the fire Miller owned one-half of the stock of the company, and that the stock registered in the names of his son and daughter was being held for his benefit and subject to his disposal. I am convinced that the plaintiff's business was run in corporate form as a partnership, that Harry Miller and Abe Dobrin each owned 50% of the company, and that the other stockholders held their shares merely as nominees for each of the principals.
The mere fact that a small corporation does not conduct its affairs in strict conformance with the corporation act does not mean that it should not have the advantages permitted by statute. Herman v. Brickman, 8 N.J Super. 204 (App. Div. 1950). But, as stated by cases above cited, it may not adopt corporate form and use it fraudulently. Automotriz Del Golfo De Cal. S.A. De C.V. v. Resnick, 47 Cal.2d 792, 306 P.2d 1, 63 A.L.R.2d 1043. For the converse of this rule, see Ritz Realty Corp. v. Eypper & Beckmann, 101 N.J. Eq. 403 (Ch. 1927), affirmed 103 N.J. Eq. 24 (E. & A. 1928). If the enterprise is considered to have been a partnership in corporate form, recovery must be denied under the authority of Bellman v. Home Ins. Co., supra, and other authorities cited supra.
Plaintiff relies heavily on Fidelity-Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co. and Merchants Ins. Co. v. Lilgeomont, both supra. The holdings in these cases are not contrary to the result here reached.
While the conclusions above stated require the entry of judgment in favor of the defendants, two other issues warrant comment.
*224 Defendants seek to avoid liability upon the premise that the proofs of loss were fraudulent in claiming excessive losses in each of the three categories and in stating in the proofs of loss that the plaintiff had no knowledge of the cause of the fire, the word used therein being "undetermined." The use of that word in the proofs of loss cannot be considered fraudulent. The failure to state that Harry Miller had been charged with arson did not adversely affect the defendants' investigation of the claim. Their agent, Riccio, was at the store on the day of the fire at 9:30 A.M. and went over the facts with the police and fire officials. He inspected the building that day and saw the cup. At the time the proofs were filed the use of the word "undetermined," in view of the investigation by the police and the charge of arson, cannot be considered as an attempt to conceal or misrepresent, and the defendants were not misled. There is no doubt that some of the losses claimed by the plaintiff are excessive. On the question of values, the defendants' proof seemed the more believable. But, the evidence is not sufficient to warrant a finding that the losses claimed by the plaintiff were so overstated that they should be considered as made with intent to cheat and defraud.
Judgment will be entered for the defendants, no cause for action.