THE CONTINENTAL INSURANCE COMPANY, APPELLEE, V.
GUSTAV'S STABLE CLUB, INC., A CORPORATION,
APPELLANT.
317 N.W.2d 734

Filed March 26, 1982.  No. 43627.

(1)

Dennis M. Coll of Raymond, Olsen & Coll, P.C., for appellant.

Francis L. Winner of Winner, Nichols, Meister & Douglas, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and HASTINGS, JJ.

BRODKEY, J., Retired.

The Continental Insurance Company (Continental), plaintiff and appellee herein, brought this declaratory judgment action in the District Court for Scotts Bluff County, Nebraska, seeking an adjudication with reference to a comprehensive business policy issued by plaintiff to its named insured, Gustav's Stable Club, Inc., and praying for a judgment declaring that a claim for a fire loss filed by the defendant under such policy was properly denied by the plaintiff. On April 17 and 21, 1980, this matter was tried before the District Court sitting without a jury. In its declaratory judgment entered on May 12, 1980, the court found that the claim submitted by the defendant to Continental for payment of such loss was properly denied, and that there was no coverage afforded to the defendant corporation from Continental under the policy in question. The court in its judgment specifically found that the defendant was a Nebraska corporation and was the owner of the insured building, which was known as the Stable Club Restaurant; that prior to August 12, 1979, Continental had issued the comprehensive business policy affording certain coverage on the premises in question; that on or about August 12, 1979, Gustav E. Platz and E. Nancy Platz were stockholders in the defendant corporation, each owning one-half of the

shares of stock therein, and Gustav E. Platz was president of the corporation; that during the first week in August 1979 and on August 12, 1979, two fires occurred at the Stable Club Restaurant; that the cause of the fires was arson and Gustav E. Platz was a principal perpetrator of the arson and resultant damages to Gustav's Stable Club Restaurant; that prior to and at the time of such fires in August 1979, Gustav E. Platz was performing and carrying out all principal functions of the defendant corporation, which were (a) collection of rent under a lease of the insured premises, and (b) acquisition and payment for insurance on said premises; and that prior to and at the time of such fires in August 1979, Gustav E. Platz was the "alter ego" of the defendant corporation and exercised a dominant control of said corporation.

The facts as presented in the record indicate that Gustav's Stable Club, Inc., a Nebraska corporation, is the owner of a restaurant and lounge called the Stable Club and located in Terrytown, Nebraska. Gustav and Nancy Platz, husband and wife, purchased the Stable Club in 1969, and operated it as a partnership until 1974, at which time the business was incorporated as a Subchapter S corporation. Upon the incorporation of the Stable Club, Gustav and Nancy became the sole shareholders, each owning 63 shares of corporate stock. Gustav became president of the corporation and Nancy became secretary-treasurer, and they were also the board of directors of the corporation.

The parties thereafter operated the Stable Club until the spring of 1978, at which time they separated. They were subsequently divorced. In March of 1978 the defendant corporation entered into a lease agreement with K & J Inc., a corporation solely owned by Sherry Kearney and managed by her husband Dennis. The Kearneys took over the operation of the Stable Club at an agreed monthly

rental of $4,500. Thereafter, the only business conducted by the corporation was the collection of the rental payments and maintenance of the insurance policy of the corporate property. It appears that during the term of the lease, Gustav Platz collected the rental payments and also acquired insurance on the Stable Club.

The Kearneys were unsuccessful in operating the Stable Club, and by July of 1979 they notified Gustav and Nancy that they were unable to make the payments on the lease. It was at this time that Gustav began to have conversations with Dennis Kearney about the possibility of burning down the Stable Club Restaurant. The record reflects that a scheme was devised whereby Kearney would find an individual to commit the arson and Gustav would pay $2,000 to that individual.

The fire insurance policy covering the Stable Club was Continental policy No. 410210. This policy, dated June 20, 1977, contained policy limitations of $275,000 on the structure and $75,000 on the building's contents. According to James Fenimore, the insurance agent for the defendant, Gustav Platz contacted him on July 19, 1979, and told him to raise the insurance coverage on the policy to $350,000 on the structure and $100,000 on its contents. Fenimore testified that Gustav wanted the higher coverage to be effective immediately and that Gustav paid the required premiums for June and July with a personal check.

Shortly thereafter, Kearney contacted one Rupert Johnson who agreed to start the fire at the Stable Club. With the assistance of another individual, Raymond Cervantes, the evidence discloses that Johnson initially set fire to the restaurant on or about August 10, 1979. According to Deputy Fire Marshal Richard McKee, who examined the premises, the first attempted arson was poorly set and resulted in minimal damage to the structure. Rupert

Johnson testified that he thereafter met with Kearney, who set the date for a second fire on August 12, 1979, to take place at approximately 2:30 a.m. on that date. Rupert was given money by Kearney to purchase gasoline, which he apparently stored in the Stable Club prior to the fire. The fire of August 12, 1979, resulted in damage to the building estimated to be $47,093.41 and damage to the contents of approximately $13,000. As a result of his participation in the fires, Gustav Platz was tried and convicted of the felony charge of conspiracy to defraud an insurance company. In September of 1979, after the fire, Gustav Platz assigned his 63 shares of stock in the defendant corporation to Nancy.

As previously stated, the trial court found that at the time of the fires in August of 1979, Gustav Platz exercised dominant control of said corporation. The record amply supports that conclusion by the trial court. At all times, he was the president of the corporation and a 50 percent shareholder therein. During the existence of the lease to K & J Inc., he exclusively managed the corporation for all practical purposes, collected the rental payments for the premises from the Kearneys, and also attended to all the insurance needs for the defendant. He was the sole negotiator for the additional insurance placed on the burned premises and its contents, the premiums for which insurance were paid by him out of his personal account. It is clear from the evidence that both Gustav and Nancy would have benefited from the receipt of the insurance proceeds had Continental paid them on the policy. This is made clear from the record in this case. Nancy was asked on cross-examination as follows: "Q. And if that fire had not been arson and the insurance company had decided to pay, Gus would have got half and you would have got half? A. That's right. Q. And Gus was president at the time? A. That's right." Also, on redirect examination she was

asked by her attorney: "Q. Mrs. Platz, when Mr. Winner asked you the question, would you divide the insurance proceeds if this hadn't been arson, that was after the payment of all the indebtedness? A. Right." Pertinent to this issue is the taped telephone conversation held on August 13, 1979, between certain police officers and Gustav Platz, and we quote certain pertinent portions of that conversation: "Q. Well, backing up to the stage where you was talking about indebtedness, what did you tell me your total indebtedness was? A. Oh, about- Q. $230,000? A. $210,000. Q. $210,000. What do you owe on the Stable Club? A. Well, between the uh the note at Commerce Savings and the note on the cabin which is attached to the Stable Club is probably about $155,000. Q. How much insurance do you have on the Stable Club? A. $350. Q. $350,000? A. Uhuh. Q. As of when? A. Well, $350,000 we have carried on it now for, I don't know the last time we had that increased, it was $275 and we had it increased to $350 a year ago, maybe. Q. Didn't you have it increased again a month ago? A. Yeah, I don't think it is in effect yet."

It is clear from the above testimony that in view of the indebtedness on the Stable Club, as testified to by Gustav Platz, and the very large amount of insurance carried on the property, both Gustav and Nancy would have undoubtedly profited by the payment of Continental on the insurance policy involved in this action. The pertinence of this fact will be made apparent following a discussion of the authorities referred to later in this opinion. In addition, we point out that the record discloses that Gustav and his former wife, Nancy, were the only members of the board of directors. At the trial, both parties could not name the date of the last board meeting. Gustav testified that it had been over 3 years previous to the time of the trial. Nancy stated that they did not have yearly corporate meetings since the

time of incorporation in 1974. Gustav testified that there had been shareholders' meetings but could not identify a date other than 3 years prior to trial. It was agreed by both parties that during the term of the lease, which was still in effect on the date of the fire, the only corporate duties were to collect the rental payments and maintain insurance. In this regard, even Nancy testified that Gustav Platz took care of those duties. We believe that for all practical purposes, the evidence reveals that Gustav exercised complete control of the corporation and that in every essential respect he was the sole person of Gustav's Stable Club, Inc., in any way conducting the business of the corporation at the time of the fire in question. Although the record bears out Nancy's contention that she was innocent of and had no knowledge of or complicity in the fires, we think it is clear that she abandoned the control and operation of the defendant corporation to her former husband. Her sole activity at that time, as reflected by the record, is that she had signed an application for a liquor license for the premises after being informed by the Kearneys that they intended to turn the operation of the Stable Club back to the Platzes. The Kearneys were still operating the club under the lease from the Platzes at the time of the fires in question.

We now discuss the legal principles applicable to the facts of this case. It appears that the question of what effect the actions of an officer or shareholder of a corporation in intentionally destroying corporate property has upon the right of the corporation to recover on a policy of fire insurance is one of first impression in this state. In its brief on appeal, the defendant contends that the intentional destruction of corporate property by a stockholder or officer does not preclude the remaining stockholders from collecting fire insurance, and that before a corporate insured can be precluded from recovering un-

der an insurance policy, it must be shown that the stockholder made the corporate entity a mere instrumentality for the transaction of the stockholder's own affairs.

Also strongly involved in the disposition of this case is the question of public policy in allowing a person to profit by his own wrong. It is undoubtedly the general rule that the willful burning of property by a stockholder of a corporation is not a defense against the collection of insurance by the corporation; nor can a corporation be prevented from collecting insurance because its agents willfully set fire to the property without the participation or authority of the corporation or of all the stockholders of the corporation. 44 Am. Jur. 2d *Insurance* § 1366 (1969). However, it is also stated in the above section at 211: "Likewise, under the salutary principle of law that no one should be allowed to profit by his own wrong, it has been held in several cases that an insured corporation will not be allowed a recovery on fire insurance policies where the incendiarist owns all or practically all of the stock in the insured corporation, *or is in exclusive management of the corporate property.*" (Emphasis supplied.) "It is axiomatic that fraudulent losses are necessarily excepted from a fire policy upon the moral principle that no man can be permitted in a court of justice to allege his own turpitude as a ground of recovery in a suit." *Miller & Dobrin, etc., Co. v. Camden Fire, etc., Assn.,* 55 N.J. ᵕuper. 205, 150 A.2d 276 (1959). In that case the court held that the corporation was barred from recovery where the incendiary was a 50 percent shareholder, the secretary-treasurer, a director, and who exercised the dominant control of the management of the corporation. The court further held that although the business was being conducted under the guise of being a corporation, it was in fact a partnership, and applied the rule applicable to partnerships.

In 5 Appleman, Insurance Law and Practice § 3113 at 387-88 (1970), that author states the rule to be as follows: "Of course, the insured's wilful burning of the property would be an absolute defense to an action upon the policy. This is true even though the policy contains no express provision so providing, as permitting the insured to profit by his own criminal act would violate public policy." Likewise, in *Kimball Ice Co. v. Hartford Fire Ins. Co.,* 18 F.2d 563 (4th Cir. 1927), the court held that a corporation cannot recover on a fire insurance policy covering property willfully burned by its general manager who was also owner of one-fourth of the corporation's stock and a large creditor of the corporation. In its opinion at 566-67, the court quoted from the opinion in *Ritter v. Mutual Life Insurance Co.,* 169 U.S. 139, 18 S. Ct. 300, 42 L. Ed. 693 (1898), as follows: " 'In all contracts of insurance, there is an implied understanding or agreement that the risks insured against are such as the thing insured, whether it is property, or health, or life, is usually subject to, and the assured cannot voluntarily and intentionally vary them. Upon principles of public policy and morals, the fraud or the criminal misconduct of the assured is, in contracts of marine or of fire insurance, an implied exception to the liability of the insurer.' " In *Kimball,* the court went on to observe at 567: "If recovery could be had in the present instance, all that would be necessary would be to turn over the property of a corporation to the exclusive management and control of a single person, who could procure insurance fraudulently and effect the willful burning of the insured premises, and assert a mere claim of innocence on the part of those interested in the company, who would thereby secure the benefit of the direct fraud."

The authorities on the issues presented in this case are collected and analyzed in an annotation appearing in 37 A.L.R.3d 1385 (1971), entitled, "Fire Insur-

ance On Corporate Property As Affected By Its Intentional Destruction By A Corporate Officer, Employee, Or Stockholder." At 1387, the editor of that annotation states the rule to be as follows: "As a general rule, it may be said that an arsonist's status as a corporate officer, employee, or stockholder per se, will not necessarily prevent a recovery by the corporation upon the policy, such rule having found expression in several cases within the scope of the annotation, and that *an analysis must be made in each case to determine if the arsonist stands to recover directly or indirectly upon the policy.*" (Emphasis supplied.) In 5 Appleman, Insurance Law and Practice, *supra,* that author concludes at 393-94: "The better rule would seem to be that the arsonist's status as an officer, stockholder, employee or agent of an insured corporation does not necessarily preclude the corporation from recovering on the policy; rather an analysis must be made in each case to see if the arsonist will benefit by recovery on fire policy, either directly or indirectly."

The present status of the law in this country on the issues under discussion is contained in the much-quoted case of *Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exch.,* 267 Cal. App. 2d 381, 385-86, 73 Cal. Rptr. 182, 185-86 (1968): " 'When . . . the beneficial owner of practically all of the stock in a corporation, and who has the absolute management and control of its affairs and property, . . . sets fire to the property of a corporation, or causes it to be done, there is no sound reason to support the contention . . . that the corporation should be allowed to recover on a policy for the destruction of the corporate property by a fire so occasioned.' (*Felsenthal Co.* v. *Northern Assur. Co.* (1918) 284 Ill. 343 [120 N.E. 268, 1 A.L.R. 602, 607].)

"If an officer or stockholder has absolute control in the conduct of the business of a corporation, his acts if he acts on behalf of the corporation become

the acts of the corporation barring it from recovery even though he is not the dominant shareholder. (*Northern Assur. Co. v. Rachlin Clothes Shop* (1924) 32 Del. 406 [125 A. 184, 187-188, 190].) Where the fire is set by a manager owning only one-fourth of the stock, but having complete control and management of the corporation, the latter may not recover. (*Kimball Ice Co. v. Hartford Fire Ins. Co.* (4th Cir. 1927) 18 F.2d 563, 564, 565-566 [52 A.L.R. 799].) Where the minority shareholder is the president and a secured creditor of the corporation, but his part in the corporate management is limited to participation and not control, it has been held that his act of incendiarism does not bar the corporation from recovering if the judgment provides that only other bona fide creditors and innocent stockholders are to share in the proceeds of the insurance. (*Fidelity-Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co.* (4th Cir. 1925) 3 F.2d 784, 785.) A Georgia court has even barred corporate recovery if the innocent stockholders will not actually realize any benefit because of the insolvent state of the corporation. (*Sandersville Oil Mill Co. v. Globe & Rutgers Fire Ins. Co.* (1924) 32 Ga. App. 722 [124 S.E. 728].) While we are not prepared to go to this extreme limit, if payment to creditors lightens the personal liability of the individual wrongdoers, then the benefit accruing to them would become apparent.

"In *Miller & Dobrin Furniture Co. v. Camden Fire Ins. Co. Assn.* (1959) *supra,* 55 N.J. Super. 205 [150 A.2d 276, 284], the court held the corporation barred from recovery where the incendiary was a 50 percent shareholder, the secretary-treasurer, a director, and who exercised the dominant control of the management of the corporation. The court further held that although the business was being conducted under the guise of being a corporation, it was in fact a partnership, and applied the rule applicable to partnerships."

Numerous other authorities might be cited in connection with the above legal issues, but we are of the opinion that those cited above adequately present the general thinking of the courts on the problem in question. The facts of this case have been previously set forth in this opinion in some detail and will not be repeated again. Suffice it to say that the action of the trial court in denying recovery to the defendant corporation on the fire policy is not only supported by public policy but also on the basis of the facts in the case showing that the instigation of the arson of the property was the act of its president, Gustav Platz, who was also one of the two sole directors of the corporation and an equal stockholder therein, and without question the dominant force in running the corporation at and prior to the time of the burning of the property. As previously demonstrated, both he and his ex-wife, Nancy, stood to gain financially from the payment of the insurance proceeds by Continental had such payment been made.

We conclude, therefore, that the record in this case presents ample evidence supporting the judgment of the trial court. Ultimately, the proposition as to whether Gustav Platz may be considered the "alter ego" of the defendant corporation is a question of fact. It should be remembered that prior to becoming a Subchapter S corporation, Gustav and Nancy ran the business as a partnership. We conclude that the corporate veil in this case should be pierced and that the business be considered as it formerly was, to wit, a partnership, and that the rule with regard to partnerships be applied as stated in *Erlin-Lawler, supra* at 386, 73 Cal. Rptr. at 186: "The rule as to partnerships or joint ventures is that innocent partners and joint venturers are also barred from recovery where the arson is perpetrated by a partner or a joint venturer." Public policy also requires this result in the instant case.

In *Gehrke v. General Theatre Corp.,* 207 Neb. 301, 298 N.W.2d 773 (1980), we held that in an action at law the findings of the trial court will not be disturbed on appeal unless clearly wrong. We are not able to state that the trial court was clearly wrong under the facts in this case; and therefore the judgment of the District Court should be and hereby is affirmed.

AFFIRMED.

WHITE, J., participating on briefs.