Argued and submitted May 16, resubmitted In Banc November 7, 1984, affirmed February 13, reconsideration denied May 10, petition for review allowed June 4, 1985
(299 Or 251)
See 300 Or 85, 706 P2d 942 (1985)

## MINNESOTA BOND LTD., dba
## All-Ways Hair & Care Port,
*Respondent,*

*v.*

## ST. PAUL MERCURY INSURANCE COMPANY,
*Appellant.*

(31205; CA A27859)

695 P2d 579

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Douglas G. Houser, John W. Buehler, and Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman, Portland.

Jeffrey A. Bowersox, Bend, argued the cause for respondent. With him on the brief was Coyner & Associates, Bend.

ROSSMAN, J.

Warren, J., dissenting.

## ROSSMAN, J.

Insurer appeals from a judgment entered in favor of the insured under a fire insurance contract, claiming that arson and misrepresentation by the insured's 50 percent shareholder, officer and director bars any recovery for the losses after the fire.[1] We disagree and accordingly affirm.

Plaintiff, Minnesota Bond Ltd., is an Oregon corporation and the named insured in a fire insurance policy issued by defendant.[2] Before plaintiff's incorporation, Jean Wallace operated All-Ways Hair & Care Port (All-Ways), a beauty salon, and her daughter, Lynda DiGeorge, operated Girl Friday, a secretarial and switchboard business. In 1979, Wallace and DiGeorge formed plaintiff to operate four businesses, including All-Ways and Girl Friday. At the time of the fire, Wallace and DiGeorge were equal shareholders. Wallace was president of plaintiff, and DiGeorge was secretary-treasurer. Both were on the board of directors. All-Ways was managed by Wallace and Girl Friday was managed by DiGeorge, although DiGeorge did the bookkeeping for both businesses. No one else was involved in the ownership, control or management of the corporation.

In September, 1980, plaintiff purchased a fire insurance policy from defendant which covered the business premises of All-Ways. On January 8, 1981, DiGeorge intentionally set fire to All-Ways' premises, in what the trial court found was an attempt to defraud defendant into paying a $1,000 debt she owed Wallace. DiGeorge misrepresented that she had left the money in an envelope attached to the adding machine in the beauty parlor just before the fire started. She later admitted that the claim was false and pled no contest to a charge of

---

[1] Defendant advances two other theories in support of this appeal: (1) the trial court erred by ruling that plaintiff's claim was not barred by a provision in the insurance contract that excludes coverage for losses caused by wilful acts or omissions of the insured, and its associates, employes and agents; and (2) the court erred by not barring plaintiff's claim due to DiGeorge's initial failure to submit to an examination under oath, as provided by the contract. We have examined these contentions and conclude that they lack merit.

[2] Our statement of facts is derived primarily from the trial court's memorandum opinion in which it included 13 special findings of fact. We are bound by the court's findings of fact that are supported by any substantial evidence. *Gordon Tree Farms v. Layne et al,* 230 Or 204, 217, 358 P2d 1062, 368 P2d 737 (1962).

reckless burning. The trial court found specifically that Wallace did not participate in, assent to or in any way ratify the act of DiGeorge. It was also found that there was no evidence that DiGeorge intended plaintiff or her mother to benefit from her act. Plaintiff made no claim in its proof of loss for the money allegedly destroyed by the fire.

On May 18, 1981, and June 15, 1981, defendant made demand on DiGeorge to submit to examination under oath, and on May 22, 1981, and July 20, 1981, DiGeorge refused. Plaintiff brought this action in January, 1982, after defendant claimed that DiGeorge's actions barred recovery under the fire insurance policy. Defendant subsequently deposed DiGeorge on June 1, 1982. The trial court found that Wallace had requested that her daughter cooperate with defendant's investigation and that she was without culpability concerning DiGeorge's conduct in relation to that investigation.

In June, 1981, DiGeorge assigned all her interest in plaintiff to Wallace.[3] The trial court found that there was no evidence of what benefit would accrue to DiGeorge if recovery were allowed, "other than inferences drawn from the above facts." Because there was no evidence that DiGeorge acted for the benefit of plaintiff, no evidence that plaintiff authorized or ratified DiGeorge's conduct and no evidence that the corporate veil had been used to accomplish fraud or injustice, the court concluded that DiGeorge's actions could not be imputed to plaintiff and did not bar recovery for the losses. We agree.

■ The question whether the wrongful acts of a 50 percent shareholder, officer and director will bar recovery by a corporate insured is one of first impression in Oregon. The majority of jurisdictions that have considered the question have held that an arsonist's status as an officer, stockholder,

---

[3] The dissent contends that the transfer of DiGeorge's stock was for valuable consideration. One should not infer from that that she indirectly benefited from the insurance proceeds. On the contrary, the record indicates that the only actual consideration she received was a typewriter. Perhaps the dissent is relying on defendant's assertion that Wallace forgave substantial debts owed her by DiGeorge. There is no support for that position in the record. Wallace did testify that she has made personal loans in small amounts to DiGeorge, totalling approximately $7,000. However, there is nothing in the record to indicate that those debts have been forgiven. Moreover, Wallace testified that she also has loaned her other children money and is not very concerned about ever getting repaid.

employe or agent of an insured corporation does not necessarily preclude recovery by a corporate insured on an insurance policy. *See, e.g., Continental Ins. Co. v. Gustav's Stable Club,* 211 Neb 1, 317 NW2d 734 (1982); *Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exchange,* 267 Cal App 2d 381, 385-86, 73 Cal Rptr 182 (1968); *Miller & Dobrin Fur. Co. v. Camden Fire Ins. Co. Ass'n.,* 55 NJ Super 205, 150 A2d 276 (1959), and cases collected in *Annot.,* 37 ALR3d 1385 (1971). Rather, the cases suggest that an analysis must be made to determine whether the arsonist was the dominant actor in the corporation or stood to benefit from its recovery. In each instance, the basic function of the court is to see that no one profits by wrongdoing. *See Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exchange, supra.*

Under the "dominant actor" method of analysis, if an officer or shareholder exercises *absolute control* in the conduct of the corporation's business, his actions are imputed to the corporation in the same way that the actions of one partner or coinsured are imputed to another partner or coinsured.[4] *See Northern Assur. Co. v. Rachlin Clothes Shop, Inc.,* 32 Del 406, 125 A 184 (1924). Thus, if a minority shareholder is the corporation's president and creditor and participates in, but does not control, corporate management, recovery is allowed. *See Fidelity-Phenix Fire Ins. Co. of N.Y. v. Queen City Bus & Transfer Co.,* 3 F2d 784 (4th Cir 1925). The rationale underlying the denial of recovery in such cases is that, when a corporation has relinquished control of its affairs to a single individual, it is deemed to have acquiesced in or ratified the wrongful acts of that individual. Conversely, when the corporation has not explicitly or implicitly authorized the acts of the wrongdoer, recovery should be allowed.

Under the cases that have analyzed the right to recover in terms of whether the arsonist stood to benefit, however, the only rule enunciated in those terms is that, if the arsonist owns *all or substantially all* of the corporate stock, recovery will be denied, because any benefit would redound solely to the wrongdoer. *See Erlin-Lawler Enterprises, Inc. v.*

---

[4] A significant number of recent decisions in other jurisdictions have held that an innocent insured should not be prohibited from recovery because of the acts of an uncontrolled coinsured or partner. *See generally,* cases collected in *Annot.,* 11 ALR4th 1228 (1982); *Annot.,* 24 ALR3d 450 (1969).

*Fire Ins. Exchange, supra,* 73 Cal Rptr at 185; *Miller & Dobrin Fur. Co. v. Camden Fire Ins. Co. Ass'n., supra,* 150 A2d at 283; *Felsenthal Co. v. Northern Assurance Co.,* 284 Ill 343, 120 NE 268, (1918). No court has denied corporate recovery *solely* on the basis that a noncontrolling stockholder stood to derive some benefit from the recovery. Although a few courts have attempted to limit recovery in those instances to the corporate stockholders who are innocent of wrongdoing,[5] the majority of courts have allowed full recovery by the corporation so long as the arsonist was not the dominant force in the corporation at the time of the fire.

In *Miller & Dobrin Fur. Co. v. Camden Fire Ins. Co. Ass'n., supra,* 150 A2d at 282, the court was asked to determine whether arson by a 50 percent shareholder, officer and director barred corporate recovery under an insurance policy. Before concluding that it did, the court set out this rule:

> "Before the stockholders, who may be innocent of wrongdoing, can be precluded from recovery, the court must be convinced * * * that the corporate fiction should be disregarded. This, in turn, requires a finding that [the arsonist] was the dominant force in the affairs of [the corporation] and that the other parties in interest in the corporation so permitted him to control the affairs of the corporation that legally they may be held responsible for his acts and precluded from recovering for his wrongdoing."

Although the amount of stock owned by the arsonist was a factor in the court's decision, it emphasized that recovery was properly denied only because the arsonist "largely dominated the affairs of the corporation" and because, in reality, the business was operated as a partnership. 150 A2d at 284-86.

■ ■  In *Erlin-Lawler Enterprises, Inc. v. Fire Ins. Exchange, supra,* a corporate insured challenged the trial court's conclusion that it was precluded from recovering under a fire insurance contract, because the arsonist, a 50 percent

---

[5] In *Fidelity-Phenix Fire Ins. Co. v. Queen City Bus & Transfer Co., supra,* for example, the court held that, although the mortgagee of corporate property protected by fire insurance policies owned one-fourth of the corporation's stock and was its president, his actions were not imputable to the mortgagor corporation because he was not a substantial owner. It decreed, however, that no part of the insurance payment should go to the mortgagee, but should be paid to other creditors and stockholders. *See also Giacobetti v. Ins. Placement Facility of Pa.,* 500 Pa 447, 457 A2d 853 (1983) (wrongful act of one cotrustee in setting fire to part of trust corpus barred him, but not others with a beneficial interest, from sharing in insurance proceeds).

stockholder, was the corporation's "alter ego." In holding that that conclusion was not supported by the findings or the evidence, the court noted that, under the lower court's finding that the arsonist owned 50 percent of the stock at the time of the fire, he would not be the controlling shareholder. 73 Cal Rptr at 186. Thus, although the arsonist stood to benefit at least to the extent of 50 percent of the recovery, that fact alone apparently was not determinative. The court also stated that, in the light of evidence that the two 25 percent shareholders took an active role in the corporation, it could not be inferred from the arsonist's status as president that he was in dominant control of the corporation. 73 Cal Rptr at 186. Because a finding that 50 percent of the shares were held independently of the arsonist was also at odds with the lower court's conclusion that the arsonist was the alter ego of the corporation and would benefit substantially by a recovery, the court remanded the case for further resolution of the issues.[6]

■■ The principles set forth in *Miller & Dobrin* and *Erlin-Lawler* tell us that a corporation will not be precluded from recovery simply because the arsonist owns 50 percent of its stock. Without evidence that the other stockholders acquiesced in the arsonist's conduct, the corporation is innocent of wrongdoing and should be allowed to recover for its loss. In the case before us, the trial court specifically found that Wallace did not participate in, assent to or in any way ratify the actions of DiGeorge. It also found that "Wallace made all decisions concerning the beauty parlor and had complete control of it." From those findings, the inescapable

---

[6] The dissent contends that plaintiff really was nothing more than a partnership, so we should disregard the corporate form and deny recovery, regardless whether DiGeorge was the dominant actor. That contention is contrary to fact and law. The trial judge specifically found that plaintiff is a corporation. Furthermore, the quote from *Miller & Dobrin Fur. Co. v. Camden Fire Ins. Co. Ass'n*, 55 NJ Super 205, 150 A2d 276 (1959),(72 Or App at 192), makes it clear that, in every case of this type where recovery is denied, the courts have pierced the corporate veil. To do that, however, it must first be shown that (1) the arsonist dominated the corporate affairs and (2) the other parties authorized or ratified that dominance. Thus, finding that the arsonist was the "dominant actor" and "piercing the corporate veil" are not alternative theories for denying recovery. Rather, the former, along with a finding that the arsonist's dominance was authorized or ratified are required elements of the latter. Because DiGeorge was not the dominant actor in this case, and because there is no evidence of authorization or ratification, we are precluded from piercing the corporate veil.

conclusion is that the corporation neither explicitly authorized DiGeorge's acts nor implicitly ratified them by allowing her to dominate corporate affairs. We, therefore, hold that the trial court correctly allowed the corporation to recover.

Affirmed.

**WARREN, J.,** dissenting.

I disagree with the majority's conclusion that the insured should not be precluded from collecting on the policy because of the arson by the 50 percent owner, director and officer. In both *Miller & Dobrin Fur. Co. v. Camden Fire Ins. Co. Ass'n.,* 55 NJ Super 205, 150 A2d 276 (1959), and *Continental Ins. Co. v. Gustav's Stable Club,* 211 Neb 1, 317 NW2d 734 (1982), discussed by the majority, the court denied the corporation recovery on the policy by treating the corporation as a partnership. In both cases, the court found that corporate formalities were ignored and the businesses were run as partnerships in corporate form. Recovery was denied on the theory that the conduct of one partner is attributed to the other partners and that the business is precluded from recovery by the partner's wrongdoing. *See also Erlin-Lawler Enterprises, Inc. v. Fire Insurance Exchange,* 267 Cal App 2d 381, 385-86, 73 Cal Rptr 182 (1968); *Travelers Fire Insurance Company v. Wright,* 322 P2d 417, 422 (Okla 1958). I would apply the same analysis in this case.

The majority asserts that, in order to pierce the corporate veil, under *Miller & Dobrin Fur. Co. supra,* we must find that the arsonist dominated the affairs of the corporation and that the other stockholder authorized or ratified that dominance. Regardless of what the rule may be in New Jersey, the law in Oregon is not so rigid. In *McIver v. Norman,* 187 Or 516, 537-38, 205 P2d 137, 213 P2d 144 (1949), the Supreme Court stated:

> "While, for all ordinary purposes, a corporation is regarded as a legal entity separate and distinct from its stockholders, yet, as Judge Sanborn said in *United States v. Milwaukee Refrigerator Transit Co.,* 142 Fed. 247, 'when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons.' See *Security Savings & Trust Co. v. Portland Flour Mills Co.,* 124 Or. 276, 288, 261 P. 432."

In Barber, "Piercing the Corporate Veil," 17 Willamette L Rev 371, 373-75 (1981), the doctrine is described as follows:

"* * * The suit in which a party seeks to disregard the corporate entity is an equitable one; the trial court generally is granted wide latitude in determining whether grounds for piercing exist.

"* * * An analysis of the piercing doctrine begins with a list of factors courts consider important in determining whether to pierce the corporate veil. A review of the case law reveals that one or more of the following factors was present in each instance of piercing:

"(1)　commingling of funds and other assets of the corporation with those of the individual shareholders (Corporation XYZ holds no separate bank account but deposits the receipts from its business transactions in the personal account of A, its sole shareholder);

"(2)　diversion of the corporation's funds or assets to noncorporate uses (to the personal uses of the corporation's shareholders);

"(3)　failure to maintain the corporate formalities necessary for the issuance or subscription to the corporation's stock, such as formal approval of the stock issue by an independent board of directors;

"* * * * *

"(5)　failure to maintain corporate minutes or adequate corporate records,

"* * * * *

"(9)　absence of separately held corporate assets;

"(10)　use of a corporation as a mere shell or conduit to operate a single venture or some particular aspect of the business of an individual or another corporation;

"(11)　sole ownership of all the stock by one individual or members of a single family;

"(12)　use of the same office or business location by the corporation and its individual shareholder(s);

"* * * * *

"(15)　disregard of legal formalities and failure to maintain proper arm's length relationships among related entities;

"* * * * *

"In determining which of these factors will overcome the

presumption of legitimacy in the use of the corporate entity, the policies behind insulating shareholders from personal liability must be balanced against the policies justifying piercing." (Footnotes omitted.)

There is substantial evidence that corporate formalities were not observed in this case. Articles of Incorporation were drawn up and filed, but no other corporate documents were produced. There were no bylaws, nor were certificates of stock issued. The Board of Directors never had a formal meeting, and the businesses of the corporation were managed separately. In addition, Wallace and DiGeorge separately received the profits from their businesses, commingling corporate and personal funds, and the finances of the businesses were considered together only for the purpose of filing a corporate tax return.

The businesses were run as a partnership before incorporation. There is no indication that the business' assets were formally transferred to the corporation or that the corporation separately held any assets. Each of the shareholders continued to run her own businesses after incorporation, and neither shared in the profits of the other's businesses.

These circumstances persuade me that the court should disregard the corporate form and treat the business as a partnership in order to prevent the inequitable result of allowing the arsonist indirectly to benefit from her wrong. *State ex rel Grabhorn v. Grabhorn*, 28 Or App 357, 559 P2d 923 (1977). It is clear that the arsonist stood to benefit from a recovery by the corporation. The fire was set by DiGeorge in order to work a fraudulent scheme to repay Wallace a $1,000 debt. Only Wallace and DiGeorge held ownership interests in the corporation, and recovery by the corporation inevitably would benefit DiGeorge.

Plaintiff corporation claims that there would, in fact, be no benefit to DiGeorge, because in June, 1981—six months after the fire, and when DiGeorge had become a suspect in the arson—she assigned all of her interests in the corporation to Wallace. I do not agree that there was no benefit to her. In deciding questions of entitlement to insurance proceeds, we look to the interests as they existed at the time of the loss, in this case, the date of the fire. *See Montgomery v. First Nat.*

*Bank,* 265 Or 55, 70, 508 P2d 428 (1973). No significance attaches to the transfer of DiGeorge's stock. Her interest was tainted when the transfer took place. Had the transfer not been made and the fraud not been discovered, she would have been entitled to her share of the insurance proceeds. It cannot be that, by transfer of the stock after the fact, the taint is removed.

Another factor which may have motivated DiGeorge's incendiary act was her expectation of a share of the insurance proceeds. DiGeorge received valuable consideration for the transfer of her 50 percent interest in plaintiff, forgiveness of a $1,000 debt to her mother and a typewriter. In transferring her interest in plaintiff, DiGeorge also transferred her expectation of insurance recovery. By allowing plaintiff to recover 100 percent of the insurance proceeds, the majority provides DiGeorge with an indirect benefit, in that she received valuable consideration for the transfer of her expectation of 50 percent of the insurance proceeds.

Because I would hold that arson by a 50 percent shareholder, officer, director and employee of a corporation in form only should bar the insured corporation's recovery of insurance proceeds, I would reverse. Accordingly, I dissent.

Joseph, C. J., joins in this dissent.